UNITED STATES

v.

**Brian P. HORTON, 049 48 0504, Intelligence Specialist Second Class (E–5), U.S. Navy.**

**NMCM 83 3078.**

U.S. Navy-Marine Corps Court of Military Review.

Sentence Adjudged 12 Jan. 1983.

Decided 30 April 1984.

---

LCDR William A. DeCicco, JAGC, USN, Appellate Defense Counsel.

CDR Richard A. Monteith, JAGC, USN, Appellate Government Counsel.

Before GORMLEY, KERCHEVAL and LECORNU, JJ.

LECORNU, Judge:

In consonance with his pleas at a general court-martial bench trial, appellant was convicted of five violations of Article 92, Uniform Code of Military Justice (UCMJ) 10 U.S.C. § 892; namely, failing to report contacts with a citizen of a communist controlled country in contravention of OPNA-VINST 5510.1F dated 26 September 1978. He also was convicted, contrary to his plea, of a violation of Article 134, 10 U.S.C. § 934, UCMJ, to wit: solicitation of a member of a communist organization to receive classified information affecting the security of the United States in violation of Title 50, United States Code (U.S.C.), section 783(c). Appellant's sentence extended to a dishonorable discharge, confinement at hard labor for 6 years, total forfeitures, and reduction to pay grade E–1. In accordance with the pretrial agreement, the convening authority approved only so much of the sentence as provides for a bad-conduct discharge, confinement at hard labor for 2 years and 10 months, and forfeitures and reduction as adjudged. Appellant also was granted day-for-day administrative credit against the confinement portion of the sentence for 65 days of pretrial confinement that the trial judge had determined to be illegal.

Before us, appellant has assigned ten errors. Our examination of the record of trial, the allied papers, the extensive briefs of counsel and the authorities cited therein, convinces us that none of the assignments entitle appellant to relief from this Court. Several of them, however, are worthy of brief comment.

█ The first four assignments derive from appellant's unsuccessful attempt to suppress certain evidence of "contacts" which the government obtained through surveillance conducted pursuant to the Foreign Intelligence Surveillance Act (FISA).[1] In accordance with section 1806(f) of the Act, appellant's challenge to the legality of the surveillance was adjudicated at an *in camera, ex parte* proceeding in the United States District Court for the Eastern District of Virginia. Based upon an affidavit filed by the Attorney General of the United States, the district court upheld the legality

---

1. 50 U.S.C. §§ 1801–1811 (Supp. IV 1980).

of the surveillance, issued an order to that effect, and directed that the record of the proceedings be sealed. Thereafter, the evidence obtained through the surveillance was introduced at appellant's general court-martial and provided the basis for his conviction of the single offense to which he pled not guilty.

The assignments under discussion challenge the constitutionality of the FISA on various grounds,[2] assert that the actions of the federal district court and Attorney General amounted to an abuse of discretion prejudicial to appellant's substantial rights, and urge that the failure of the district court to disclose the record of the *in camera, ex parte* proceeding has deprived appellant of a verbatim record of trial and a legally sufficient post-trial review.

We reject these contentions without reaching the merits. We do not believe that the core issues raised by appellant are within this Court's reviewing powers. Section 1806(h) of the FISA expressly declares that district court rulings are "final orders and binding upon all Courts of the United States ... except a United States court of appeals and the United States Supreme Court." Thus, in our view, appellant is pressing these claims in the wrong forum.

In his fifth assignment, appellant contends that OPNAVINST 5510.F is a nonpunitive directive and, as a result, his guilty pleas to alleged violations thereof were improvident. In support of this contention, appellant urges that the purpose of the instruction is to provide guidance to commands concerning classification and handling of classified material, rather than to regulate individual conduct. We disagree.

Appellant was convicted of violating two sections of the instruction, which we set forth in pertinent part with emphasis supplied:

> 4–200 GENERAL
>
> Certain matters affecting national security *must* be reported to the Naval

Investigative Service so appropriate counterintelligence action can be taken. *All military* and civilian personnel, whether they have access to classified information or not, *shall report* to their commanding officers or the nearest command any activities *described* in this section involving themselves, their dependents or others....

> 4–202 CONTACTS WITH CITIZENS OF COMMUNIST COUNTRIES
>
> 1. *Any form* of contact, intentional or otherwise, with any citizen of a communist controlled country *shall be reported* to the Naval Investigative Service. The term "contact" means *any form of encounter*, association, or communication with any citizen of a communist controlled country, including contacts in person or by radio, telephone or letter ... for any .. reason....
>
> \*      \*      \*      \*      \*      \*
>
> 3. *Contacts* and other associations with citizens of communist controlled countries *are not, in themselves, wrong, against regulations or illegal.* Such contacts, *must*, however, *be reported* to the Naval Investigative Service *immediately after they occur* so the Naval Investigative Service can establish, to the extent necessary, all pertinent facts to protect the Department of the Navy from hostile intelligence activities....

We begin our analysis with the recognition that the punitive character of a regulation is determined by examining it in its entirety. Ordinarily, no single factor is controlling. In every case, the central question is whether the order, by its very terms, evidences an intention to regulate individual conduct and to punish individuals who violate its provisions. *United States v. Nardell,* 21 U.S.C.M.A. 327, 45 C.M.R. 101 (1972).

Applying this test to the instant case, we think it abundantly clear that the challenged instruction, and particularly the

---

**2.** The constitutionality of FISA has been consistently upheld by federal courts that have ruled on the issue. *United States v. Belfield,* 692 F.2d 141 (D.C.Cir.1982); *United States v. Falvey,* 540 F.Supp. 1306 (E.D.N.Y.1982); *United States v. Megahey,* 553 F.Supp. 1180 (E.D.N.Y.1982).

above-quoted sections, seek to regulate the conduct of individuals in the handling of classified material. Moreover, mandatory language, such as "shall be reported" and "must be reported," is directed at individuals throughout the instruction. Section 2–200, for example, underscores the individual's responsibility in the following language:

> All personnel, civilian or military, of the Department of the Navy are responsible individually for complying with the provisions of this regulation in all respects.

The directive also delineates a variety of administrative sanctions that may be imposed on "any person" who is responsible for a violation. The recitation of these sanctions, in our view, can not be reasonably interpreted as precluding punitive action under the UCMJ. On the contrary, this section of the instruction serves to emphasize the individual's stake in strict compliance, so as to avoid both punitive and enumerated administrative consequences.

■ Premised on the foregoing, we conclude that the order in question is punitive in nature and that violations thereof are cognizable under Article 92, UCMJ. Accordingly we find the assignment to be without merit.

■ In a related assignment, it is argued that the reporting requirements of OPNAVINST, 5510.1F are violative of appellant's rights against self-incrimination. In support of this assignment, appellant cites the decision of this Court in *United States v. Tyson,* 2 M.J. 583 (N.C.M.R.1976). There it was held that Article 1139, U.S. Navy Regulations, which requires the reporting of all observed offenses to proper authority, was improperly applied to the accused. As the accused stood convicted of receiving stolen property, the Court reasoned that he should not have been convicted of failing to report the theft of the identical property, thereby incriminating himself. The Court, therefore, dismissed the order violation, but emphasized that it perceived no infirmity in the regulation as written.

The *Tyson* Court, as does appellant in his brief, relied upon the decisions of the United States Supreme Court in *Marchetti v. United States,* 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968) and *Grosso v. United States,* 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968). In these cases, the petitioners had been convicted of violating statutes requiring reports of gambling income. In reversing the convictions, the Supreme Court ruled that compliance with the statutes created a "real and appreciable hazard" of self-incrimination.

We are of the opinion that the authorities cited by appellant are not controlling in the instant case. The statutory reporting requirements declared invalid by the Supreme Court, as well as the Navy regulation held to be improperly applied in *Tyson,* dealt with reports of illegal acts. The regulations at issue in this appeal, however, are clearly distinguishable. Sections 4–200 and 4–202, quoted *supra,* require the reporting of "contacts" of "any form" with any citizen of a communist controlled country. Moreover, the directive makes clear that the report is required, even though the contacts are not, in and of themselves, illegal. It also sets forth the reason for the requirement; namely, the protection of the Navy from hostile intelligence activities. To be sure, the instruction does not evidence a "purpose of gathering information from citizens in order to the secure their convictions of crime." *Grosso, supra,* at 73, 88 S.Ct. at 716 (Brennan, J., concurring).

We, therefore, conclude that the decision of the Court of Military Appeals in *United States v. Kauffman,* 14 U.S.C.M.A. 283, 34 C.M.R. 63 (1963), is dispositive of the issue. In that case, the Court was confronted with an Air Force regulation that contained reporting requirements similar to those before us. In rejecting the contention that the regulation abridged the accused's rights against self-incrimination, the Court observed that, "[i]f, in the reporting, the [accused] should incriminate himself, such is due to his own conduct and not a result of the regulation." *Id.* at 34 C.M.R. 78. We believe that this conclusion applies with

equal force and validity to the challenged provisions of OPNAVINST 5510.1F. Accordingly, we uphold these provisions and reject the assignment.[3]

■ Lastly, we turn to appellant's argument that the decision of the Court of Military Appeals in *United States v. Allen*, 17 M.J. 126 (C.M.A.1984), should prompt this Court to grant additional administrative credit against the approved sentence to confinement at hard labor. As previously noted, appellant was granted day-for-day credit for 65 days of pretrial confinement which the trial judge determined was illegal. We do not believe that the conditions of appellant's pretrial confinement were so egregious as to warrant more than day-for-

day credit and, therefore, we find that this assignment is without merit. *See United States v. Suzuki*, 14 M.J. 491 (C.M.A.1983).

Finding no errors materially prejudicial to any of appellant's substantial rights, we affirm the findings and sentence, as approved on review below.

Senior Judge GORMLEY and Judge KERCHEVAL concur.

---

3. If appellant's argument is carried to its logical extreme, a host of military orders and regulations could be invalidated on the ground that they jeopardize rights against self-incrimination. Watch-standers and sentries in all branches of the service, for example, frequently are required by regulation to maintain logs and record, *inter alia*, the times of posting and relief and the results of tours and inspections. Log entries reflecting that a sentinel did not post at the prescribed time or conduct an inspection in accordance with standing orders could subject the individual to disciplinary action. Historically, such reporting requirements have proved essential to military security, order, discipline, and mission accomplishment. They clearly pass muster under *Kauffman* and, in our judgment, convincingly demonstrate the fallacy of appellant's challenge to the instruction in the instant case.