**UNITED STATES**

**v.**

**Airman First Class Bruce D. OTT, FR 190–52–9931, United States Air Force.**

**ACM 25710.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 7 Aug. 1986.

Decided 25 March 1988.

Appellate Counsel for the Appellant: Colonel Leo L. Sergi and Major Harry L. Heintzelman, IV.

Appellate Counsel for the United States: Colonel Joe R. Lamport, Lieutenant Colonel Robert E. Giovagnoni and Captain Jeffrey H. Curtis.

Before SESSOMS, LEWIS and BLOMMERS, Appellate Military Judges.

## DECISION

SESSOMS, Senior Judge:

Contrary to his pleas the appellant was convicted in a bench trial of four specifications of espionage related offenses. The sentence imposed included a dishonorable discharge, total forfeitures, reduction to airman basic, and confinement for twenty five years.

Three of the offenses were charged under Article 134, U.C.M.J., 10 U.S.C. § 934, as violations of federal criminal statutes. The specifications allege (1) that Airman Ott took a government document with the intent or with reason to believe that the information was to be used to the injury of the United States or to the advantage of a foreign nation; (2) that having been entrusted with a unit recall roster, a document relating to national defense, he willfully attempted to deliver the same to a person not entitled to receive it; and (3) willfully attempting to deliver a classified document into the possession of a person not entitled to receive it. The fourth offense was charged as a violation of Article 92, U.C.M.J., 10 U.S.C. § 892. The specification alleged that he had failed to obtain his "commander's approval prior to contacting an establishment of a communist controlled country" as required by Air Force Regulation 205–57, Counter Intelligence Awareness and Briefing Program (22 November 1983).

During January 1986 Airman Ott made several telephone calls to the Soviet Consulate in San Francisco, California. Through information derived under the Foreign Intelligence Surveillance Act (FISA), the Federal Bureau of Investigation (FBI) was informed of these calls. An agent of the FBI's Foreign Counterintelligence Division telephoned the appellant on January 11, 1986, in an effort to learn why he had been calling the Consulate. During the course of this initial conversation, Airman Ott and the FBI agent agreed to meet two days later at a fast-food restaurant in Davis, a town near the state capital of Sacramento.[1]

During their first meeting the appellant advised "Ivan" that he had access to classified information pertaining to the SR–71 aircraft. He indicated that he could provide "Ivan" SR–71 training and mission information, as well as the "Dash–1" (flight operational manual), and other technical data on the SR–71 and its crew members. To establish his bona fides appellant gave "Ivan" a copy of his squadron's recall roster. This roster had been provided to Airman Ott for his official use only. It was at this meeting that Airman Ott first expressed his desire to become a "mole" and to establish a career-long relationship with the Soviets. "Ivan" furnished Ott a San Francisco mailing address for his use in scheduling future meetings. Such meetings were to be held whenever he was in possession of classified information he wished to disclose.

Within a few days thereafter Airman Ott wrote to "Ivan" at the address provided. In this letter he requested a meeting with "Ivan" for January 19, 1986, indicating that he would have the "required information" with him. He told "Ivan" that he was asking $165,000 for this information and that he would accept it in three equal installments of $55,000 each. Before this meeting could be consummated, Airman

---

1. At all times during this entire operation the agent identified himself as "Ivan," and held himself out to be a Soviet agent.

Ott's personal automobile was repossessed by his finance company. During telephone conversations which followed, Ott told "Ivan" that this repossession action had left him without a means of transportation. He stated his need for $600.00 with which to regain possession of his automobile. He wanted "Ivan" to send that amount to him via Western Union. This "Ivan" was reluctant to do. However, he did eventually agree to meet Ott in the Yuba City public library where he could personally deliver the money and get Ott to sign a receipt. At this time they agreed that their next rendezvous would occur the following day in Davis at the restaurant where they had first met.

Airman Ott recovered his automobile from the finance company on January 22, 1986. That afternoon he removed from the orderly room safe a copy of Strategic Air Command (SAC) Regulation 55–21 Volume XI, SAC Tactical Doctrine for SR–71 Crews (16 July 1982). He took this regulation, parts of which were classified secret, with him to Davis. After their initial contact at the restaurant he accompanied "Ivan" and another FBI member, who was also posing as a Soviet agent, to a local motel. The ostensible reason for the presence of the third person was to judge the authenticity of the document Ott was going to provide them, and to appraise its monetary value to the Soviet Union. During the meeting in the motel, which was videotaped, the appellant was questioned at length about his motives. His responses were clear and unequivocal, and left no doubt that he knew what he was doing. His primary reason for giving classified information to foreign agents was monetary gain. However, he did suggest that his actions were politically motivated to some degree. The classified regulation was passed to the agents, and at his insistence, Ott was given an additional $400.00 in return. When it appeared that the meeting was over and the participants were about to depart, agents of the FBI and the Air Force Office of Special Investigations (OSI) burst into the room, arresting Ott, and pretending to take the other two into custody.

■ Appellant contends that the military judge erred in refusing to dismiss Charge I and its specification because the regulation, A.F.R. 205–57, as applied to the facts in this case, violated his Constitutional right against self-incrimination, citing *United States v. Heyward*, 22 M.J. 35 (C.M.A. 1986). The regulation requires Air Force members to "obtain their commander's approval before contacting or visiting any establishment, including those located within the United States and friendly countries, of a communist controlled country, whether for private or official reasons." In *Heyward, supra*, the Court of Military Appeals held that an individual could not be required to comply with a regulatory requirement to report drug abuse of others when he, himself, was criminally involved in the same conduct. We do not find the holding in *Heyward* to be of benefit to the appellant in these circumstances. This regulation, which applies to all Air Force members equally, does not compel the reporting of illegal acts. Had Ott properly complied with the regulation it would have necessarily been before he had committed any illegal acts. Therefore, no constitutional interest would have been violated. *United States v. Kauffman*, 14 U.S.C.M.A. 283, 34 C.M.R. 63 (1963); *United States v. Horton*, 17 M.J. 1131 (N.M.C.M.R.1984), *pet. denied*, 19 M.J. 43 (C.M.A.1984). The reporting requirement of this regulation involved a non-criminal area of inquiry. This type of requirement does not violate compulsory self-incrimination rights. *Shapiro v. United States*, 335 U.S. 1, 68 S.Ct. 1375, 92 L.Ed. 1787 (1948).

■ As stated earlier in this opinion, a portion of the evidence used by the prosecution was obtained pursuant to the Foreign Intelligence Surveillance Act, 50 U.S.C. § 1801 (1978). The military judge ordered that the issues of discovery and suppression regarding FISA derived evidence be adjudicated in the United States Federal District Court for the Eastern District of California in accordance with 50 U.S.C. § 1806(f). Appellant asserts that the trial judge erred in failing to independently evaluate this evidence as applied to military courts-martial as well as the appro-

priateness of the government's use of FISA derived evidence under Mil.R.Evid. 505. The statute clearly places the jurisdiction for resolution of discovery and suppression issues regarding evidence obtained pursuant to this act exclusively in the Federal District Court "if the Attorney General files an affidavit under oath that the disclosure or an adversary hearing would harm the national security of the United States." The resolution of these issues is ex parte and in camera. The Attorney General filed such an affidavit in this instance. Therefore, it was incumbent upon the military judge to transfer this issue to the District Court for resolution. Numerous courts have reviewed this practice and all have agreed that the law is constitutional. *United States v. Belfield,* 692 F.2d 141 (D.C.Cir.1982); *In the Matter of Kevork,* 788 F.2d 566 (9th Cir.1986); *United States v. Megahey,* 553 F.Supp. 1180 (E.D.N.Y.1982), *aff'd mem.,* 729 F.2d 1444 (2d Cir.1983); *United States v. Duggan,* 743 F.2d 59 (C.A.N.Y.1984). The appellate route for any adverse ruling in the District Court lay only in the Circuit Court of Appeals for the Ninth Circuit. Since there was no appeal to the higher court we find that the trial judge did not err in accepting the findings of the district court as final.

In his third assignment of error the appellant asserts that because of his "mental condition" he was not responsible for his acts, or did not have the mental capacity at the time of the offenses alleged in Charge II and the Additional Charge to form the specific intent required for a conviction of those offenses. This "mental condition," in the opinion of the psychiatrist appearing for the defense, was a "borderline personality disorder with intermittent atypical psychosis." It was his opinion that because of this mental condition the appellant was unable to conform his conduct to the requirements of the law. The prosecution argued vigorously that the appellant was mentally responsible and presented the testimony of several witnesses in support of that view. Included as prosecution witnesses were two psychiatrists and a psychologist, the latter of whom qualified as an expert in clinical psychology and clinical neuropsychology. The psychologist, Dr. Brooker, had spent several hours with the accused over a five day period during which he administered a battery of tests, obtained substantial background material, and studied the audio and videotapes made of the accused during his contacts with the FBI agent, "Ivan". Dr. Brooker concluded that Airman Ott was capable of understanding societal norms, conforming his conduct to those norms, and that he could appreciate the consequences of his acts. The military psychiatrist, who had presided over the sanity board hearing for the accused, concluded that the appellant had no psychiatric illness at the time of the offenses, nor did he exhibit symptoms of a disease or defect at any time under consideration. Finally, the prosecution presented Dr. Alfred P. French, a noted clinical and forensic psychiatrist. Dr. French had reviewed the report of the defense psychiatrist, the investigative report, the audio and videotapes, and the results of the various psychological tests taken by Ott. He found that there was "very powerful evidence that he did not suffer from a thought disorder." He further stated that it is the general opinion of the psychiatric community that personality disorders do not qualify as diseases or disorders which might either substantially impair an individual's capacity to conform his conduct to the requirements of the law, or to understand the criminality of his conduct. In final analysis, Dr. French concluded that the accused was able to conform his conduct to the requirements of the law and to appreciate the criminality of his conduct.

 The sanity of an accused is a factual determination to be made by the court members under proper instructions or by the military judge in a bench trial. *See United States v. Benedict,* 20 M.J. 939 (A.F.C.M.R.1985). By his finding of guilty, the military judge determined that issue adversely to the accused. There was substantial competent evidence adduced at trial from which the trial judge could reach that conclusion. We, like the trial judge, are convinced beyond a reasonable doubt

that the appellant was mentally responsible at the time of the commission of the offenses. Article 66(c), U.C.M.J., 10 U.S.C. § 866(c).

We find the remaining assignments of error to be without merit, and we resolve those adversely to the appellant. We have examined the entire record of trial and conclude that the findings and sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant was committed. Accordingly, the approved findings and sentence are

AFFIRMED.

Judge LEWIS and Judge BLOMMERS concur.