UNITED STATES

v.

Kenneth J. KELLIHER, 319 64 6631 Sergeant (E–5), U.S. Marine Corps.

NMCM 88 4537.

U.S. Navy–Marine Corps Court of Military Review.

Sentence Adjudged 14 April 1988.

Decided 30 Aug. 1990.

---

* Participated prior to transfer 17 August 1990.

LT Jacob R. Walker, JAGC, USNR, Appellate Defense Counsel.

LT John J. Mulrooney, II, JAGC, USNR, Appellate Government Counsel.

Before BYRNE, C.J., and
ALBERTSON and JONES *, JJ.

PER CURIAM:

Pursuant to his pleas, appellant was convicted by a general court-martial and sentenced by officer members for violations of the Uniform Code of Military Justice (UCMJ), Article 92, 10 U.S.C. § 892. After being convicted of two specifications alleging violations of a lawful general regulation and one specification alleging willful dereliction of duty, appellant was sentenced to confinement for 1 year, total forfeiture of all pay and allowances, reduction to pay grade E–1, and a bad-conduct discharge. The convening authority disapproved all the confinement, but otherwise approved the sentence as adjudged.

## I

With his release from active duty impending, appellant was questioned concerning the activities of several Marines with whom he served as a Marine guard at the U.S. Embassy in Moscow. During these interrogations, appellant, having been properly advised of his rights under the UCMJ and the Constitution, stated that while serving in Moscow he was seeing an American woman named Anna. Additionally, he admitted having contacts with friends of Anna's who were Soviet nationals and acknowledged his failure to report those contacts to his superiors as required. These admissions formed the basis for a charge preferred on 4 April 1987. That same day, appellant admitted that while assigned as a guard at the U.S. Embassy in Bern, Switzerland, he secreted classified items in the garage of his sister's home and allowed an unauthorized foreign national to enter a restricted area within that embassy after hours. Appellant also consented to a search of his effects stored at his sister's

residence, which yielded classified documents. Appellant was not told of the already preferred Charge against him prior to consenting to the search and implicating himself in the wrongful removal and storage of classified materials.

Appellant asserts (1) that the military judge erred by failing to dismiss the Specification under Charge I because the regulation requiring him to report contacts with Soviet nationals (OPNAVINST 5510.1G) required him to incriminate himself in violation of UCMJ, Article 31, 10 U.S.C. § 831 and the Fifth Amendment to the U.S. Constitution; and (2) that the statements taken from him after Charge I had been preferred, the search to which he consented, and its fruits, should have been suppressed as being acquired in violation of his Sixth Amendment right to counsel. For the reasons set forth below, we do not agree.

## II

■ Appellant's girlfriend in Moscow was an American student attending a Moscow music school. She introduced him to three other Soviet students at the school who were her classmates. He met with his girlfriend and the three Soviets weekly for a period of 8 months at her apartment. Although communication with them was next to impossible, as he spoke no Russian and they no English, he did not report these contacts to the Naval Investigative Service as he was required to do by OPNAVINST 5510.1G.[1] His stated reason was that appropriate authorities would forbid him from returning to the music school to see his girlfriend.

Appellant maintains that had he reported these social contacts, he would have divulged a significant link in a chain of evi-

---

* Participated prior to transfer 17 August 1990.

1. The reporting requirement of paragraph 5–3, Chapter 5, OPNAVINST 5510.1G (April 20, 1984), states:

    5–3 *Contacts With Citizens of Communist Controlled or Hostile Countries.* Any form of contact, intentional or otherwise, with any citizen of a communist controlled country or country currently hostile to the United States must be reported to the Naval Investigative

Service. The term "contact" means any form of encounter, association, or communication with any citizen of a communist controlled or hostile country, including contacts in person or by radio, telephone or letter or other forms of communication for social, official, private or any other reason. Also report any visits to embassies, consulates, trade or press offices, or other official establishments of one of these countries, for any reason.

dence tending to establish his guilt of fraternization, which could have been charged against him as a violation of Marine Security Guard Company Order 5000.4E. He argues that although having contact with Soviet citizens is not in itself proscribed by the OPNAV Instruction, at the time his duty to report these contacts arose he was already in violation of the company order which prohibited fraternization with Soviet citizens. Because appellant concludes that requiring him to report these contacts violated his privilege against compulsory self-incrimination afforded by the Fifth Amendment and UCMJ, Article 31, the Charge and Specification alleging violation of the OPNAV Instruction should have been dismissed.

We find nothing in the record suggesting that appellant's initial contacts with Soviet nationals, required to have been reported by the OPNAV Instruction, constituted the sort of fraternization that was prohibited by his company's order. Additionally, the reporting requirement did not compel appellant to report his own illegal acts. The requirement to report contacts with Soviet citizens is facially neutral, and compliance with it would not of itself have incriminated appellant, as simple contacts with Soviet citizens is not of itself a criminal act. *United States v. Heyward*, 22 M.J. 35, 37 (C.M.A.1986) (and authorities cited therein); *United States v. Horton*, 17 M.J. 1131, 1134 (NMCMR 1984). Unlike the situation in *Heyward*, appellant was not already an accessory or principal to any illegal activity at the time he was required to make the report. He was therefore not protected by the privilege against self-incrimination. The possibility that had such contacts been reported, attention might have been focused on appellant and could have led to a criminal investigation and charges against him for fraternization does not of itself invalidate the OPNAV reporting requirement.[2] *Heyward*, 22 M.J. at 37; *United States v. Kauffman*, 14 U.S.C.M.A. 283, 34 C.M.R. 63 (1963); *Horton*, 17 M.J. at 1134. *See United States v. Hoff*, 27 M.J. 70 (C.M. A.1988); *United States v. Dupree*, 24 M.J.

319 (C.M.A.1987). Therefore, even though it might be argued appellant had engaged in misconduct in the form of fraternization based on his continued and lengthy association with these Soviets after failing to report his initial contact with them, he was not relieved from his responsibility to comply with OPNAVINST 5510.1G at the time the duty to report arose. As the reporting requirement here violates neither the Fifth Amendment nor Article 31, UCMJ, the military judge did not err by declining to dismiss this Charge and specification.

### III

■ On 4 April 1987, appellant made a statement and gave consent for a search to Naval Investigative Service agents in Washington, D.C. That same day, a charge was preferred against appellant in Quantico, Virginia, alleging violation of OPNAVINST 5510.1G for his failure to report the previously discussed contacts with Soviet citizens, a violation unrelated to either the statement he then made on 4 April, the permissive search he authorized that day, or the evidence seized from him as a result of that search.

Appellant does not assert that he was not told of his right to counsel prior to making the 4 April statement or consenting to the search, nor does he claim that he was questioned outside the presence of a retained or detailed attorney. Nonetheless, he argues that because he waived his right to counsel and consented to the search without knowing that a charge had been preferred against him, his waiver and consent were not knowing and intelligent; therefore, statements he made and the fruits of the search to which he consented should have been suppressed, and the Charge and Specification based on this evidence should have been dismissed.

■ Appellant's argument is that preferral of any charge against him is a "critical stage" of criminal proceedings, analogous to an indictment in the federal system. Consequently, disclosure to him of the preferral of the Charge on 4 April was

2. We have been pointed to no indication that appellant was ever charged with fraternization.

required before he could make a knowing and intelligent waiver of his Sixth Amendment rights even as to unrelated matters also under criminal investigation.[3] He implies that without the knowledge that the criminal investigation of his activities had reached a "critical stage," his cooperation, given in an attempt to avoid prosecution, would not have been provided. At trial, the military judge found that as to all statements, acknowledgements, and waivers, the appellant understood he had a right to counsel each time, and as to each of the statements, appellant expressly waived his right to counsel. The Sixth Amendment right to counsel attaches from the moment judicial proceedings are initiated against a person, whether by way of formal charge, preliminary hearing, indictment, information, or arraignment. *Kirby v. Illinois*, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972); *Brewer v. Williams*, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977). In the military, the right to counsel does not attach until preferral of charges, and entitles an accused to the assistance of an attorney during any "critical stage" in the proceedings, including subsequent government interrogation. *United States v. Wattenbarger*, 21 M.J. 41 (C.M.A.1985); *but cf. Maine v. Moulton*, 474 U.S. 159, 170, 106 S.Ct. 477, 484, 88 L.Ed.2d 481, 492 (1985) (right to counsel inheres upon initiation of judicial proceedings because after initiation of adversary criminal proceedings "the government has committed itself to prosecute . . . and the adverse positions of government and defendant have solidified." (citations omitted)). The issue presented here is whether evidence, pertaining to a charge as to which appellant's Sixth Amendment right to counsel had not attached at the time the evidence was obtained, must be excluded where notification of preferral of a distinct and unrelated charge had not been given to appellant.

■ In seeking evidence pertaining to pending charges, such as the preferred charge here alleging failure to report contacts with Soviet citizens, government criminal investigations are limited by the Sixth Amendment rights of the accused. *Id.* An accused's waiver of the right to counsel during any questioning by government agents with regard to pending charges must be knowing, intelligent and voluntary. Where an accused has waived the right under the Sixth Amendment to have counsel present during post-indictment or in the military, post-preferral questioning, the key inquiry is whether the accused was made sufficiently aware of this right and of the possible consequences of a decision to forgo the aid of counsel. *Patterson v. Illinois*, 487 U.S. 285, 108 S.Ct. 2389, 101 L.Ed.2d 261 (1988). As a general matter:

> [A]n accused who is admonished with the warnings prescribed by [the Supreme] Court in *Miranda*, has been sufficiently apprised of the nature of his Sixth Amendment rights, and of the consequences of abandoning those rights, so that his waiver on this basis will be considered a knowing and intelligent one. We feel that [the] conclusion in a recent Fifth Amendment case is equally apposite here: "Once it is determined that a suspect's decision not to rely on his rights was uncoerced, that he at all times knew he could stand mute and request a lawyer, and that he was aware of the State's intention to use his statements to secure a conviction, the analysis is complete and the waiver is valid as a matter of law."

---

3. Such a suggestion has been made where the post-indictment questioning relates to the same subject as the indictment, *i.e.*, that an accused should be informed that he has been indicted before a post-indictment waiver is sought. *Patterson v. Illinois*, 487 U.S. 285, 295, 108 S.Ct. 2389, 2397, 101 L.Ed.2d 261, 274 n. 8 (1988), referring to *United States v. Mohabir*, 624 F.2d 1140, 1150 (2d Cir.1980) and *United States v. Payton*, 615 F.2d 922, 924–925 (1st Cir.), *cert. denied*, 446 U.S. 969, 100 S.Ct. 2950, 64 L.Ed.2d 830 (1980). Because, in that case, petitioner conceded that he had been informed of his indictment, the Court did not address the question whether or not an accused must be told that he has been indicted before a post-indictment Sixth Amendment waiver will be valid. "Nor did [the Court] even pass on the desirability of so informing the accused—a matter that can be reasonably debated." *Patterson*, 487 U.S. at 295 n. 8, 108 S.Ct. at 2397 n. 8. The Supreme Court then rejected the holding in *Mohabir* that some "additional" warnings or discussions with an accused were required in this situation. *Id.*

*Id.*, 487 U.S. at 296–297, 108 S.Ct. at 2396, 101 L.Ed.2d at 275, quoting *Moran v. Burbine*, 475 U.S. 412, 422–423, 106 S.Ct. 1135, 1141, 89 L.Ed.2d 410, 422 (1986). (Other citations and footnotes omitted.)

██ Thus, where an appellant contends that he lacked a full and complete appreciation of all the consequences which could flow from such a waiver, despite having been properly warned under UCMJ, Article 31, that any statement that he might make could be used against him in subsequent criminal proceedings, this contention will not defeat a showing by the Government that the information provided to the accused regarding the waiver satisfied the constitutional minimum and the UCMJ. *Id.*

We see nothing in the record to indicate that evidence gathered from the appellant on 4 April was acquired in an attempt to eviscerate his Sixth Amendment rights as to the Charge preferred on 4 April. The rights warnings given before he chose to make his 4 April statement were sufficient to satisfy the Government's obligation to advise him of his Sixth Amendment right to counsel. These warnings, mandated under UCMJ, Article 31 and the Fifth Amendment, were sufficient in the context of this case, where a charge unrelated to the matters for which appellant was being questioned on 4 April, had been preferred. Even assuming that preferral of a charge is the legal equivalent of a federal indictment, the Government's decision here to take the step of preferring an unrelated charge on the same day appellant was being questioned on different matters by other government authorities

does not substantially increase the value of counsel to the accused at questioning, or expand the limited purpose that an attorney serves when the accused is questioned by authorities. With respect to this inquiry, we do not discern a substantial difference between the usefulness of a lawyer to a suspect during

custodial interrogation, and his value to an accused at postindictment questioning.

*Patterson*, 487 U.S. at 298, 108 S.Ct. at 2396, 101 L.Ed.2d at 276.

██ Had the appellant's admissions, obtained by the Government agents on 4 April, resulted in evidence used to prove the Charge preferred that day, that evidence might well have been inadmissible at the trial of that Charge, for appellant's Sixth Amendment rights might well have been found to have been violated.[4] On the facts of this case, however, we find that in obtaining the evidence from appellant on 4 April, the Government did not violate the Sixth Amendment by knowingly circumventing the appellant's right to the assistance of counsel. *Maine v. Moulton*, 474 U.S. 159, 180, 106 S.Ct. 477, 489, 88 L.Ed.2d 481, 498 (1985). Further, the evidence obtained on 4 April would have been properly admitted at trial, for:

[T]o exclude evidence pertaining to charges as to which the Sixth Amendment right to counsel had not attached at the time the evidence was obtained, simply because other charges were pending at that time, would unnecessarily frustrate the public's interest in the investigation of criminal activities.

*Id.*

We find that appellant need not have been told of the charge preferred against him to validly waive his Sixth Amendment and UCMJ, Article 31 rights, where, as here, the statements and consent to search given by the appellant concerned matters unrelated to the already preferred charge. We hold that the incriminating evidence gathered from appellant on and ·after 4 April pertaining to those Charges preferred after 4 April, as to which the Sixth Amendment rights of appellant had not yet attached, would have been properly admitted at trial, and that therefore the military judge did not err in ruling that the evidence

**4.** Because the Sixth Amendment's protection of the attorney-client relationship, that is, the right to rely on counsel as a medium between the accused and the Government, extends beyond the protection afforded the Fifth Amendment's right to counsel, there will be cases where a

waiver which would be valid under *Miranda* will not suffice for Sixth Amendment purposes. *Patterson*, 487 U.S. at 297 n. 12, 108 S.Ct. at 2396, 101 L.Ed.2d at 275 n. 12; *Maine v. Moulton*, 474 U.S. at 176, 106 S.Ct. at 477, 88 L.Ed.2d at 481.

acquired from appellant by admissions and through seizure of evidence pursuant to a permissive search of his property that day were not taken in violation of appellant's Sixth Amendment right to counsel. *United States v. Kon Yu–Leung*, 910 F.2d 33 (2d Cir., 1990).

▬ Appellant's conditional pleas of guilty were providently made and properly accepted. No error materially prejudicial to his substantial rights was committed.[5] The findings of guilty and the sentence as approved on review below are affirmed.

---

**5.** We note that the trial military defense counsel, pursuant to R.C.M. 1106(f)(4), submitted a lengthy response to the staff judge advocate's R.C.M. 1106 recommendation addressing several legal errors he believed occurred at the pretrial, trial, and post-trial proceedings. The staff judge advocate did not make any comments regarding those matters raised by the defense as he was required to do. *United States v. Hill*, 27 M.J. 293 (C.M.A.1988). Since the convening authority's action states that the convening authority considered defense counsel's submission (albeit misnomered as matters submitted under R.C.M. 1105), we find the appellant has not been prejudiced, particularly when the convening authority disapproved all confinement adjudged and authorized appellant's appellate leave. (The pretrial agreement would have permitted her to approve and order executed all of the confinement adjudged, and the trial defense counsel requested suspension of all confinement and forfeitures.) Additionally, appellant chose not to raise the issue before us, including some of the matters raised in trial defense counsel's submission. We therefore consider the staff judge advocate's error waived.