**UNITED STATES, Appellee,**

v.

**James R. REED, Corporal, U.S. Marine Corps, Appellant.**

No. 52,069.
NMCM 84–4351.

U.S. Court of Military Appeals.

May 11, 1987.

For Appellant: *Lieutenant Commander Alvin L. McDonald,* JAGC, USN (argued); *Major Eugene P. Whetzel,* USMCR–R (on brief); *Major Michael E. Canode,* USMC.

For Appellee: *Lieutenant Commander Lawrence W. Muschamp,* JAGC, USN (argued); *Captain Carl H. Horst,* JAGC, USN, and *Lieutenant Robert G. Sosnowski,* JAGC, USNR (on brief); *Commander Michael P. Green,* JAGC, USN.

*Opinion of the Court*

SULLÍVAN, Judge:

Appellant was tried by a general court-martial composed of a military judge alone on August 15, 1984, at Marine Corps Air Station, New River, Jacksonville, North Carolina. Pursuant to his pleas, he was found guilty of violating Article 1139, U. S. Navy Regulations, by failing to report the transfer and possession of marihuana by a fellow Marine on March 15, 1984. This regulatory offense was charged as a violation of Article 92(1), Uniform Code of Military Justice, 10 U.S.C. § 892(1). Also, pursuant to his pleas, he was found guilty of a single specification alleging use of marihuana on ten occasions between June 1983 and April 1, 1984, in violation of Article 134, UCMJ, 10 U.S.C. § 934. He was sentenced to a dishonorable discharge, confinement for 1 year, total forfeitures, and reduction to the lowest enlisted pay grade. The convening authority approved a sentence limited to a bad-conduct discharge, confinement for 9 months, total forfeitures, and reduction to E–1. The Court of Military Review affirmed in a short-form opinion.

This Court has reviewed the following issue in this case:[1]

> WHETHER UNITED STATES NAVY REGULATIONS, ARTICLE 1139, REQUIRING MEMBERS OF THE NAVAL SERVICE TO REPORT KNOWN OFFENSES, MAY BE ENFORCED BY CRIMINAL PROSECUTION UNDER ARTICLE 92 OF THE UNIFORM CODE OF MILITARY JUSTICE.

We have serious doubts about the propriety of using this particular regulation as a basis for criminal prosecution under Article

---

1. As specified, the original issue before this Court referred to Article 1132. However, all parties were aware that Article 1139 was at issue here.

92(1).[2] However, we decide this case on a more narrow basis, namely that the providence inquiry supporting his guilty pleas was inadequate, Art. 45(a), UCMJ, 10 U.S.C. § 845(a).

Turning first to the particular regulation alleged as being violated, we note that the original version of this regulation promulgated in 1973 states:

> Persons in the Department of the Navy shall report to proper authority offenses committed by persons in the Department of the Navy which come under *their* observation.

(Emphasis added.) However, this regulation was inexplicably changed in 1979 to read as follows:

> Persons in the Department of the Navy shall report to proper authority offenses committed by persons in the Department of the Navy which come under *this* observation.

(Emphasis added.) .The amended version was in effect at the time of the alleged offense and at trial. Such a change perhaps may be no more than a clerical error, but its existence in this form even today undermines such conjecture. In any event, the very existence of this question in the context of a criminal prosecution may be fatal to the Government's case. *See United States v. Mersky,* 361 U.S. 431, 440–41, 80 S.Ct. 459, 464–65, 4 L.Ed.2d 423 (1960).

Looking at the regulation as a whole, we find two questions are generally raised in this case—First, is Article 1139, U. S. Navy Regulations (1973), a lawful general regulation within the meaning of Article 92(1)? *See* Part IV, paras. 16*c* 1(c) and 14*c* (2)(a), Manual for Courts-Martial, United States, 1984. Second, is due process of law violated by prosecuting a servicemember under Article 92(1) for failing to obey this regulation? *See Rose v. Locke,* 423 U.S. 48, 96 S.Ct. 243, 46 L.Ed.2d 185 (1975).

On the first claim, appellant suggests this regulation constitutes an unauthorized exercise of power by the Secretary of the Navy. *See United States v. Smith,* 1 M.J. 156 (C.M.A. 1975). The apparent basis for this claim is that it is so broadly drafted that it unreasonably includes the reporting of offenses not related to the operations of the Department of the Navy. *See generally Goldman v. Weinberger,* 475 U.S. 503, 106 S. Ct. 1310, 89 L.Ed.2d 478 (1986). He also asserts that it violates the Fifth Amendment because it requires members of the Department of the Navy to incriminate themselves directly or indirectly. *See United States v. Thompson,* 22 M.J. 40 (C.M.A. 1986); *United States v. Heyward,* 22 M.J. 35 (C.M.A. 1986). Finally, it is suggested that the regulation as written may infringe on a servicemember's First-Amendment right to associate with other members of the Department of the Navy in an off-duty context. *See generally Brockett v. Spokane Arcades, Inc.,* 472 U. S. 491, 105 S.Ct. 2794, 86 L.Ed.2d 394 (1985).

In regard to the due process claim, appellant basically asserts that the regulation as presently drafted is void for vagueness. First, as noted above, he argues that the words "come under this observation" are unintelligible in the context of this regulation and as such create impermissible conjecture concerning its scope at least in the criminal context. *See United States v. Cardiff,* 344 U.S. 174, 73 S.Ct. 189, 97 L.Ed. 200 (1952); *United States v. Evans,* 333 U.S. 483, 68 S.Ct. 634, 92 L.Ed. 823 (1948). Second, he asserts that the regulation as drafted provides no notice to appellant as to what offenses must be reported.[3] *See Rose v. Locke, supra.* Third, he asserts that the regulation as drafted imparts absolute discretion to convening authori-

---

**2.** This Court and others have recognized that the validity of the regulation violated is a matter affecting the providence of guilty pleas. *United States v. Aycock,* 15 U.S.C.M.A. 158, 159, 35 C.M.R. 130, 131 (1964); *United States v. Green,* 22 M.J. 711 (A.C.M.R. 1986); *United States v. Dykes,* 6 M.J. 744 (N.C.M.R. 1978).

**3.** The possibilities include violations of federal civilian law, federal military law, state law, administrative regulations, honor codes, and religious tenets. *Cf.* Note, *Forcing the Bystander to Get Involved: A Case for a Statute Requiring Witnesses to Report Crime,* 94 Yale L. J. 1787, 1800 n.100 (1985).

ties, prosecutors, judges, and members to bring charges or to determine guilt. *Giaccio v. Pennsylvania*, 382 U.S. 399, 86 S.Ct. 518, 15 L.Ed.2d 447 (1966). *See generally* W. LaFave & A. Scott, *Handbook on Criminal Law* 87–88 (1972).

Many of these challenges to this regulation may be found inapplicable in appellant's case because of the particular conduct in which he allegedly engaged. *See Parker v. Levy*, 417 U.S. 733, 752–62, 94 S.Ct. 2547, 2559–64, 41 L.Ed.2d 439 (1974). However, we need not resolve all these questions today because one of these claims is particularly applicable in this case.

The guilty-plea inquiry in this case reads in pertinent part as follows:

MJ: All right, let's talk about the two offenses. Looking first at Charge I and its Specification, are you willing to admit to this court at this time that on or about 15 March 1984 that you violated a lawful general regulation?

ACCUSED: Yes sir.

MJ: Are you willing to admit that on that date there was in existence, United States Navy Regulations, 1139, dated 26 February 1973, which made it unlawful to fail to report an offense under the Uniform Code of Military Justice, to wit: the offense of transfer and possession of marihuana?

ACCUSED: Yes, sir.

MJ: Do you feel that on 15 March 1984 you had a duty to obey that regulation?

ACCUSED: Yes, sir.

MJ: Did you obey it?

ACCUSED: No, sir.

MJ: What did you fail to do, if anything?

ACCUSED: Failure to report an offense punishable under the UCMJ.

MJ: *All right, tell me about that offense that you failed to report.*

ACCUSED: *Transfer of marihuana.*

MJ: *And possession?*

ACCUSED: *Yes, sir.*

MJ: *By whom?*

ACCUSED: *By one Sergeant JOHNSON.*

MJ: *All right. In other words you saw him possess and transfer marihuana in your presence, is that correct?*

ACCUSED: Yes, sir.

MJ: And you are willing to admit that the United States Navy Regulation which I have just cited makes it an offense under the regulation not to report possession and transfer of marihuana, is that correct?

ACCUSED: Yes, sir.

MJ: And you feel that you had a duty to obey the regulation?

ACCUSED: Yes, sir.

MJ: But you did not report it, is that correct?

ACCUSED: Yes, sir.

MJ: Do you feel that you violated this lawful general regulation by not reporting Sergeant JOHNSON's conduct?

ACCUSED: Yes, sir.

MJ: All right, turn to Charge II and its Specification. Here the government alleges that you used marihuana, a Schedule I controlled substance on ten different occasions between June of 1983 and 1 April 1984. Is that correct?

ACCUSED: Yes, sir.

MJ: Did you in fact use marihuana?

ACCUSED: Yes, sir.

MJ: Did you know it to be marihuana?

ACCUSED: Yes, sir.

MJ: Were you familiar with marihuana?

ACCUSED: Yes, sir.

MJ: How did you use it, did you ingest it or inhale it?

ACCUSED: Inhaled it, sir.

MJ: You smoked it?

ACCUSED: Yes, sir.

MJ: And are you sure that these ten occasions occurred between the dates alleged on the charge sheet?

ACCUSED: Yes, sir.

MJ: Do you feel that the use of marihuana by you as indicated on the charge sheet was wrongful?

ACCUSED: Yes, sir.

MJ: Do you feel that your conduct under the circumstances was prejudicial to good order and discipline in the armed forces or was service discrediting?

ACCUSED: Yes, sir.

MJ: Why?

ACCUSED: Because it's against the law, sir.

MJ: Did you ever do this in the presence of civilians?

ACCUSED: No, sir.

MJ: *Always in the presence of other Marines or by yourself, is that correct?*

ACCUSED: *Yes, sir.*

MJ: Do you think that the use of marihuana by a noncommissioned officer in the United States Marine Corps adversely impacts on good order and discipline in the Marine Corps?

Accused: Yes, sir.

MJ: Even though you do it off base?

ACCUSED: Yes, sir.

MJ: On non duty hours?

ACCUSED: Yes, sir.

(Emphasis added.)

Appellant clearly stated that he used marihuana on ten occasions between June of 1983 and April 1, 1984. He also admitted that he did it in the presence of other Marines on some of these occasions. Finally, he admitted that he observed Sergeant Johnson transfer and possess marihuana on March 15, 1984, a date within the period of his marihuana use noted above. These responses clearly raise the question whether appellant's failure to report was a result of his use of marihuana at that time or of his being an accessory or principal to the illegal activity he failed to report. *See United States v. Heyward,* 22 M.J. at 37. The military judge's inquiry does not satisfactorily resolve this question,[4] and accordingly we reverse as to this offense. *See United States v. Bailey,* 21 M.J. 244 (C.M.A. 1986). However, we are satisfied

that this action does not affect the approved sentence.

The decision of the United States Navy-Marine Corps Court of Military Review as to Charge I and its specification is reversed. The findings of guilty thereon are set aside and in the interests of justice that specification and Charge are dismissed. In all other respects the decision below is affirmed.

EVERETT, Chief Judge (concurring):

I join in the principal opinion. However, I believe the conviction of appellant for violating Article 1139, U.S. Navy Regulations, not only involves the Fifth-Amendment privilege against self-incrimination but also due-process and First-Amendment guarantees.

Article 1139 provides:

*Obligations to Report Offenses.*

Persons in the Department of the Navy shall report to proper authority offenses committed by persons in the Department of the Navy which come under *this* observation.

(Emphasis added.) Since the word "this," which has been present since 1979, renders the directive incomprehensible, I shall assume for the moment that the language was intended to be *"their observation."* In that event, Article 1139 would seem to impose an obligation to report all offenses of any kind—whether violations of military law, state law, or local ordinances, and perhaps even violations of honor codes.

I suspect that the drafters of Article 1139 did not intend to create such a sweeping obligation; but I cannot be sure. Likewise, I am unsure what is meant by the regulation's reference to "proper authority"—especially if the term "offenses" extends beyond violations of military law.

---

4. Even if Sergeant Johnson's pretrial statement admitted at the Article 32 Investigation that "Reed just rode along with me and does not sell marihuana although he does smoke it" could be considered for this purpose, it does not eliminate our concern. Other evidence admitted at that hearing suggests the contrary. *See generally United States v. Bethea,* 22 U.S.C.M.A. 223, 46 C.M.R. 223 (1973).

In *United States v. Heyward*, 22 M.J. 35, 38 (C.M.A. 1986) (Everett, C.J., concurring), I observed: [1]

> For the most part, the common law was reluctant to impose affirmative duties—whether to rescue others, to report crimes, or otherwise. See Note, *Forcing the Bystander to Get Involved: A Case for a Statute Requiring Witnesses to Report Crime*, 94 Yale L.J. 1787 (1985). Most American legislatures and courts have shared this reluctance. Thus, crimes like misprision of a felony or being an accessory after the fact have generally been interpreted to require more than a failure to act. Moreover, in drafting its Model Penal Code, the American Law Institute rejected very modest proposals to create affirmative duties enforced by punishment.
>
> Some widespread attitudes in our society may underlie the unwillingness to punish those who refuse to act—even when such action would help law enforcement or preserve the public safety. Our vernacular reflects these attitudes in the use of terms like "stool pigeon," "rat," "snitch" and "tattletale"—terms which make clear that those who report others' misdeeds often are unpopular. While some institutions maintain honor codes, which may require the reporting of observed infractions, a substantial portion of our citizenry are unwilling to "get involved" by preventing or reporting crimes.
>
> I do not applaud or condone the unwillingness many have to be their brother's keeper—although, on the other hand, I certainly would not wish to live in a country like Nazi Germany, where children were motivated to report any seemingly disloyal thought or action of family members. My concern is that, because failure to act usually is not punishable, someone who fails to act may be unaware of the possible consequences of his omission.

Nonetheless, I was sure that Heyward, an Air Force noncommissioned officer, was on notice of his duty to report drug abuse by subordinates. Contrariwise, I conclude that Article 1139's broad language did not adequately define the duty to report offenses which it placed on Reed, so it did not provide him the constitutionally requisite notice.

Admittedly, *Parker v. Levy*, 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974), permits military authorities to issue directives that, if issued by civil authorities, might be invalidated as vague or overbroad. However, although Captain Levy must have been well aware that his conduct was intended to be punishable under Articles 133 and 134 of the Uniform Code of Military Justice, 10 U.S.C. §§ 933 and 934, respectively, appellant was not adequately advised by Article 1139 that his failure to report drug usage by others was intended to be criminally punishable. Because generally no legal duty exists to report "to proper authority" the crimes of others, the vague language of this regulation was insufficient to meet due-process requirements. *Cf. United States v. Johanns*, 20 M.J. 155 (C.M.A.), *cert. denied*, 474 U.S. 850, 106 S.Ct. 147, 88 L.Ed.2d 122 (1985).

Next, I am convinced that sweeping requirements for servicemembers to report the crimes of others infringe on First-Amendment rights. The drafters of the Bill of Rights contemplated that Americans could speak and associate freely. However, if each person in the community is subject to punishment for not reporting any offense he may observe someone else commit, free speech will be chilled and the development of close personal relationships will be stifled. Even law-abiding citizens may not wish to associate with others who are under an obligation to inform the police of any violation of law they may observe.

Police officers and prosecutors usually have some discretion as to whom they arrest and prosecute. However, Article 1139 leaves no similar discretion for persons in the Navy in determining what offenses to

---

1. Judge Cox noted his agreement with my view. 22 M.J. 35, 38 n. 3.

report; and it appears to subject them to an absolute, all-inclusive duty to report offenses. If this Regulation was intended to be enforced criminally,[2] failure to perform this duty authorizes imposition of severe penalties under Article 92, UCMJ, 10 U.S.C. § 892. To impose on everyone this sweeping obligation will have inhibiting effects on freedom of association and assembly in the Navy—effects so great as to be impermissible under the First Amendment.

I realize that *Parker v. Levy, supra,* emphasizes that the military community is unique, so that military personnel can be subjected to duties and restrictions that would be intolerable in the civilian community. *See United States v. Heyward, supra* at 38 (Everett, C.J., concurring). However, the power of an armed service over its members is not unlimited; and, even in the interests of military necessity, military authorities may not create a "police state" within the military society, as Article 1139 purports to do.

This Court heretofore has not tolerated military orders or regulations that were overly broad. *United States v. Wilson,* 12 U.S.C.M.A. 165, 30 C.M.R. 165 (1961); *United States v. Wysong,* 9 U.S.C.M.A. 249, 26 C.M.R. 29 (1958); *United States v. Milldebrandt,* 8 U.S.C.M.A. 635, 25 C.M.R. 139 (1958). In my view, these holdings have not been vitiated by *Parker v. Levy, supra.* Moreover, it appears clear from oral argument and otherwise that Article 1139 often is used as a threat for its *in terrorem* effect, rather than as a basis for prosecution and trial. Since many instances of such use may escape all judicial scrutiny, every reason exists to apply here those Supreme Court precedents which confer very broad standing to attack legislation that, because of its excessive breadth, has a chilling effect on free speech or other First-Amendment rights.[3]

Sometimes, of course, a statute will not be invalidated, even though it is overly broad. *See, e.g., Brockett v. Spokane Arcades, Inc.,* 472 U.S. 491, 105 S.Ct. 2794, 86 L.Ed.2d 394 (1985). There, the Supreme Court held that partial, rather than facial, invalidation was the required remedy in

---

2. Conceivably Article 1139 was only hortatory and was intended to describe a moral obligation, rather than to impose a legal duty enforceable by criminal sanctions.

3. In *Secretary of State of Maryland v. Joseph H. Munson Company, Inc.,* 467 U.S. 947, 104 S.Ct. 2839, 81 L.Ed.2d 786 (1984), the Supreme Court observed:

[T]he Court has allowed a party to assert the rights of another without regard to the ability of the other to assert his own claims and " 'with no requirement that the person making the attack demonstrate that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity.' " [Citations omitted] ("Given a case or controversy, a litigant whose own activities are unprotected may nevertheless challenge a statute by showing that it substantially abridges the First Amendment rights of other parties not before the court").

Facial challenges to overly broad statutes are allowed not primarily for the benefit of the litigant, but for the benefit of society—to prevent the statute from chilling the First Amendment rights of other parties not before the court.

Id. at 957–58, 104 S.Ct. at 2847.

\* \* \* \* \* \*

"Overbreadth" has also been used to describe a challenge to a statute that in all its applications directly restricts protected First Amendment activity and does not employ means narrowly tailored to serve a compelling governmental interest. [Citations omitted.]

*Id.* at 965 n. 13, 104 S.Ct. at 2851 n. 13.

\* \* \* \* \* \*

Where... a statute imposes a direct restriction on protected First Amendment activity, and where the defect in the statute is that the means chosen to accomplish the State's objectives are too imprecise, so that in all its applications the statute creates an unnecessary risk of chilling free speech, the statute is properly subject to facial attack. [Citations omitted.]

*Id.* at 967–68, 104 S.Ct. at 2852–53 (footnote omitted). *See also Thornhill v. Alabama,* 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed.2d 1093 (1940); *National Association for the Advancement of Colored People v. Button,* 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963); *Aptheker v. United States,* 378 U.S. 500, 84 S.Ct. 1659, 12 L.Ed.2d 992 (1964); *Dombrowski v. Pfister,* 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965); *United States v. Robel,* 389 U.S. 258, 88 S.Ct. 419, 19 L.Ed.2d 508 (1967); *Gooding v. Wilson,* 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972); *Village of Schaumburg v. Citizens For a Better Environment,* 444 U.S. 620, 100 S.Ct. 826, 63 L.Ed.2d 73 (1980).

dealing with a state moral-nuisance statute which infringed on constitutionally protected speech. However, in that case it was feasible to sever the valid from the invalid portions of the statute by excising from the statute the word "lust." On the other hand, I see no reasonable way to divide Article 1139 between that portion which is constitutionally overbroad and that portion, whatever its scope, which is constitutionally permissible. For us to attempt to rewrite this regulation would arrogate to this Court a power and responsibility which belong to the Executive Branch.

In view of the unconstitutionality of Article 1139, it cannot properly be enforced against appellant or against anyone else.[4] Thus, Reed's pleas of guilty were improvident because under no circumstances could he be lawfully convicted for disobeying this Regulation. For this reason, as well as those expressed in the principal opinion, the findings of guilty on this Charge must be set aside and the Charge and its specification dismissed.

COX, Judge (dissenting):

I would like to agree with that portion of Chief Judge Everett's opinion which states that Article 1139, U.S.Navy Regulations, is overly broad and vague and, therefore, appellant is entitled to a reversal of the Charge. Indeed, I would have joined him if appellant had contested the Charge and litigated the question at trial.

The fatal flaw I observe in appellant's position argued on appeal is that appellant, himself, did not find the regulation to be too vague and overly broad. He admitted to the military judge that he knew he had a duty under the regulation to report the transfer of drugs, but he failed to do so. Although the regulation may be vague and overly broad to Chief Judge Everett and me, it certainly was not to this appellant, who readily admitted his guilt. *See generally Parker v. Levy,* 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974). One who knows and understands the prohibitions of the law cannot be heard to complain that it is vague.

I cannot agree with Judge Sullivan's reliance on *United States v. Heyward,* 22 M.J. 35 (C.M.A. 1986), which I authored, to find the pleas *possibly* improvident. *United States v. Logan,* 22 U.S.C.M.A. 349, 47 C.M.R. 1 (1973). If the *Heyward* decision represented a departure from existing practice in the Navy, perhaps I would be tempted to overlook this obviously-valid guilty plea, but the decision in *Heyward* was in part predicated on long-standing Navy practice not to hold a principal liable for failing to report when doing so would have required self-incrimination. *See United States v. Tyson,* 2 M.J. 583 (N.C.M.R. 1976). I have faith that defense counsel and the military judge were aware of this case.

In short, this guilty plea case is the wrong vehicle to use to make an earthshaking constitutional pronouncement or to set an otherwise proper plea aside as being improvident.

I would affirm the decision of the Court of Military Review.

---

**4.** *See* cases cited in n. 3.