UNITED STATES, Appellee,

v.

**Lyle V. HOFF, Senior Chief Machinist's Mate, U.S. Navy, Appellant.**

No. 56,696.

NMCM 86 0404.

U.S. Court of Military Appeals.

Sept. 29, 1988.

For Appellant: *Lieutenant Daniel W. Dooher*, JAGC, USNR (argued); *Commander J. A. Williams*, JAGC, USN, *Lieutenant Colonel Richard E. Ouellette*, USMC, *Lieutenant J. Cunyon Gordon*, JAGC, USN (on brief).

For Appellee: *Lieutenant Scott A. Hagen*, JAGC, USNR (argued); *Captain Wendell A. Kjos*, JAGC, USN (on brief); *Commander M. P. Green*, JAGC, USN and *Lieutenant Larry D'Orazio*, JAGC, USNR.

*Opinion of the Court*

SULLIVAN, Judge:

In June and July 1985, appellant was tried by a general court-martial composed of a military judge alone at the Naval Station, Mayport, Florida. Contrary to his pleas, he was found guilty of being an accessory after the fact to the larceny of government property, misprision of the same larceny, and four specifications of failing to report this larceny and various offenses related thereto contrary to Article 1139, U. S. Navy Regulations. *See* Arts. 78, 134, and 92, Uniform Code of Military Justice, 10 U.S.C. §§ 878, 934, and 892, respectively. The judge sentenced appellant to a bad-conduct discharge, confinement for 6 months, and forfeiture of $413 pay per month for 6 months. The convening authority approved these results. The Court of Military Review consolidated with some modification the accessory and the misprision offenses into a single specification of Charge VI. It also consolidated two of the service-regulation offenses into a single specification of the Additional Charge. It dismissed the remaining offenses and affirmed the findings of guilty of the consolidated specifications. Upon reassessment, it affirmed the sentence.

This Court specified the following issues for review:

## I

WHETHER CHARGE VI AND ITS SPECIFICATION SHOULD BE DISMISSED BECAUSE (A) THE CHARGE AS FORMULATED BY THE COURT OF MILITARY REVIEW DOES NOT STATE AN OFFENSE UNDER ARTICLE 134, UCMJ (MISPRISION OF AN OFFENSE), OR (B) THERE WAS INSUFFICIENT EVIDENCE TO PROVE BEYOND A REASONABLE DOUBT THAT APPELLANT COMMITTED ACTS THAT AFFIRMATIVELY CONCEALED THE CRIMINAL ACTS OF OTHERS.

## II

WHETHER THE ADDITIONAL CHARGE AND ITS SPECIFICATION (VIOLATION OF A LAWFUL GENERAL REGULATION (ART. 1139, NAV. REG.)) SHOULD BE DISMISSED BECAUSE OF (A) THE UNCONSTITUTIONALITY OF ART. 1139, OR (B) THE CHARGED CONDUCT INVOLVES THE PRIVILEGE OF APPELLANT AGAINST SELF–INCRIMINATION UNDER THE 5TH AMENDMENT, UNITED STATES CONSTITUTION.

We hold that the court below erred as a matter of law in its modification of the specification of Charge VI, and we reinstate the language of the original misprision specification. We also set aside the remaining service-regulation offense because of the Government's concession that it is multiplicious for findings with the misprision offense.

The court below stated the following concerning the specifications challenged in the granted issues:

4. We will dismiss Specifications 2 and 4 of the Additional Charge as the duty to report offenses involving the conspiracy to remove and destroy the pages from the OTL [Operating Target Log] and the actual removal and destruction of the pages pertain to criminal conduct in which the appellant was not only actively involved, but initiated, as reflected in his conviction of Charges I and VI, and therefore, the privilege against compelling self-incrimination excuses his noncompliance with his duty otherwise to report the offenses. United States v. Heyward, 22 M.J. 35 (C.M.A.1986).[1] *For the same reason, we disapprove the words in Charge VI to the effect "and fail to make the same known to the civil or military authorities as soon as possible."* On the other hand, we do not apply the *Heyward* rationale of excusing noncompliance in regard to consolidated Specifications 1 and 3 because the failure to report as alleged therein pertains to conduct of the conspirators which occurred before the appellant elected to engage in the cover-up, and, therefore, the offenses were completed at a time that the appellant would not have incriminated himself by reporting the conspirators. As such, the consolidated offenses in Specifications 1 and 3 of the Additional Charge neither are preempted by nor are multiplicious for findings or sentencing with the consolidated offenses of Charges I and VI.

5. We do not believe a punitive discharge is excessive where the appellant abdicated his responsibilities as a senior chief petty officer and failed to report to proper authorities evidence of crime in his division of which [sic] he personally observed and further actively assisted the conspirators in concealing evidence of the crime after Naval authorities became aware of such matters.

Accordingly, Charge I and Specifications 2, 3, and 4 of the Additional Charge are set aside and dismissed. Charge I and Specification 3 of the Additional Charge are, incorporated into, respectively, Charge VI and Specification 1 of the Additional Charge, as follows:

Charge VI. Violation of the UCMJ, Article 134.

Specification. In that Senior Chief Machinist's Mate Lyle V. Hoff, U.S. Navy, Precommissioning Unit Theodore Roosevelt, on active duty, did, on board USS Yosemite, having knowledge that Master Chief Boiler Technician Donald H. Brew-

1. *Cert. denied,* 479 U.S. 1011, 107 S. Ct. 656, 93 L.Ed.2d 710 (1986).

er, U.S. Navy, Fleet Reserve, Boiler Technician Second Class Frank C. Menn, U.S. Navy, Boiler Technician Second Class Andrew R. Courson, U.S. Navy, and Machinery Repairman Second Class Wade A. Fruge, U.S. Navy, had actually committed a serious offense, to wit: larceny of government property of a value of over $100.00, did, on board USS Yosemite, from about September 1983 to about April 1984, wrongfully conceal such serious offense by wrongfully inducing the said persons to recopy and alter pages from the R–2 Operating Target Log of the USS Yosemite, and by suggesting that if pages torn out of the R–2 Operating Target Log for USS Yosemite were destroyed the Naval Investigative Service would notice the discrepancy.

Additional Charge. Violation of the UCMJ, Article 92.

Specification 1. In that Senior Chief Machinist's Mate Lyle V. Hoff, U.S. Navy, Precommissioning Unit Theodore Roosevelt, on active duty, did, on board USS Yosemite, between September 1983 and April 1984, violate a lawful general regulation, to wit, Article 1139, U.S. Navy Regulations, dated 26 February 1973, by wrongfully failing to report the conspiracy among Master Chief Boiler Technician Donald H. Brewer, U.S. Navy, Fleet Reserve, Boiler Technician Second Class Frank C. Menn, U.S. Navy, Boiler Technician Second Class Andrew R. Courson, U.S. Navy, and Machinery Repairman Second Class Wade A. Fruge, U.S. Navy, to commit offenses under the Uniform Code of Military Justice, as well as the actual commission of an offense, to wit, conspiracy to commit larceny and wrongful disposition of military property and the actual theft of such property, of a value of over $100.00, said offenses being committed by persons in the Department of the Navy and under the observation of the said Senior Chief Hoff.

(Emphasis added.)

----------

The crime of misprision of a felony, prosecuted under Article 134 of the Code, was well established as a matter of military law. *See* para. 213*f* (6), Manual for Courts-Martial, United States, 1969 (Revised edition); para. 213*d* (6), Manual for Courts-Martial, United States, 1951. It was based on federal law and required both a failure to disclose the felony of another and the "positive act of" concealing it. *See Legal and Legislative Basis, Manual for Courts-Martial, United States, 1951*, at 297. The crime of "misprision of serious offense" explained in the present Manual is substantially the same crime. *See* para. 95, Part IV, Manual for Courts-Martial, United States, 1984; Drafters' Analysis, 1984 Manual, *supra* at A21–103.

Appellant was originally charged with and found guilty of the following misprision offense, which alleged that the accused

did, on board USS Yosemite, *having knowledge that* Master Chief Boiler Technician Donald H. Brewer, U.S. Navy, Fleet Reserve, Boiler Technician Second Class Frank C. Menn, U.S. Navy, Boiler Technician Andrew R. Courson, U.S. Navy, and Machinery Repairman Second Class Wade A. Fruge, U.S. Navy, *had actually committed a serious offense, to wit: larceny of government property of a value over $100.00*, did, on board USS Yosemite, from about September 1983 to about April 1984, *wrongfully conceal such serious offense* by wrongfully inducing the said Master Chief Boiler Technician Donald H. Brewer, U.S. Navy, Fleet Reserve, Boiler Technician Second Class Frank C. Menn, U.S. Navy, Boiler Technician Second Class Andrew R. Courson, U.S. Navy, and Machinery Repairman Second Class Wade A. Fruge, U.S. Navy, to recopy and alter pages from the R–2 Operating Target Log of the USS Yosemite *and fail to make the same known to the civil or military authorities as soon as possible.*

We agree with the Court of Military Review that there was evidence in the record from which the military judge could find

beyond a reasonable doubt that appellant both concealed and failed to disclose the larceny by his fellow crewmembers. *See generally United States v. Hart*, 25 M.J. 143 (C.M.A.1987), *cert. pending.*

Turning to the legal sufficiency of the specification under Charge VI, we do not agree with the court below that the portion of the original specification pertaining to the failure to disclose must be struck because of our decision in *United States v. Heyward, supra.* The Court of Military Review inadvertently read the words "and fail to make the same known to the civil or military authorities as soon as possible" to refer to appellant's failure to disclose his own criminal conduct in inducing the thieves to recopy and alter log pages as a coverup. Such a reading overlooks the fact that the offense alleged to be misprisioned in this specification was the larceny of government property. Moreover, by definition, allegation, and proof, that crime was committed by persons other than appellant. Para. 213f (6), 1969 Manual, *supra. See* para. 95(b)(3) and (c)(3), 1984 Manual, *supra.* Accordingly, the original specification as charged by the Government, found by the judge, and initially approved by the court below embraced no self-incrimination problem, and it may be reinstated.[2] Our action does not warrant any relief as to the sentence.

The second issue in this case concerns appellant's conviction of the Additional Charge of violating Article 1139, U.S. Navy Regulations. *See generally United States v. Reed*, 24 M.J. 80 (C.M.A.1987). The Government conceded in oral argument that this offense is multiplicious for findings with the misprision offense. *See generally United States v. Baker*, 14 M.J. 361 (C.M.A.1983). Since this specification will be set aside on this ground, we need not further address specified issue II.

The decision of the United States Navy-Marine Corps Court of Military Review is reversed as to the modification of the con-solidated specification of Charge VI and as to the consolidated specification of the Additional Charge. The modification is set aside, and the words "and fail to make the same known to the civil or military authorities as soon as possible" are restored to the specification of Charge VI (as consolidated). The findings of guilty of the Additional Charge and its consolidated specification are set aside and that charge is dismissed. In all other respects the decision is affirmed.

Judge COX concurs.

EVERETT, Chief Judge (concurring in part and dissenting in part):

I

A

Hoff was convicted of being an accessory after the fact to larceny of government property (Charge I), misprision of the larceny (Charge VI), and other offenses. The Court of Military Review "conclude[d], and the Government concede[d], that Charges I and VI are multiplicious for findings, as the offenses described substantially the same misconduct in two different ways, and should be consolidated into a single specification." (Unpub. op. at 2). The court also disapproved these words in Charge VI: "and fail to make the same known to the civil or military authorities as soon as possible."

The final result was that the Court of Military Review consolidated some of the allegations of Charge I into Charge VI and dismissed Charge I, but left Charge VI without any allegation that Hoff had failed to inform "civil or military authorities" of the larceny which had been committed. Appellant contends that the revised Charge VI, which purports to be for misprision, now is legally insufficient for this purpose because the Court of Military Review disapproved a necessary allegation.

I fail to see how appellant suffered substantial prejudice from our disposition in this case.

---

2. Assuming appellate review by this Court is as limited as posited by Chief Judge Everett (*cf.* H. Moyer, *Justice and the Military* § 2–780 (1972)),

The majority opinion, as I understand it, disposes of the contention by reinstating the words that were originally in Charge VI and which were stricken by the Court of Military Review. I disagree with this solution because, in my opinion, it is beyond the power of this Court on an accused's appeal to reinstate words in a specification which theretofore have been disapproved by a Court of Military Review. Cf. Art. 67(d), Uniform Code of Military Justice, 10 USC § 867(d). I am concerned that the Court is setting a bad precedent which may come back to haunt us.

B

Article 67(b) prescribes these three ways in which a record of trial may come before this Court for review:

(1) mandatory review of death cases; (2) all cases reviewed by a Court of Military Review which the Judge Advocate General orders sent to the Court of Military Appeals for review; and (3) all cases reviewed by a Court of Military Review in which, upon petition of the accused and on good cause shown, the Court of Military Appeals has granted a review.

Regardless of how the case arrives at this Court, we "may act only with respect to the findings and sentence as approved by the convening authority and as affirmed or set aside as incorrect in law by the Court of Military Review." *See* Art. 67(d). I have no doubt that this means that we may only act on a petition to review the findings as affirmed below or that we may review findings which have been set aside only on a certificate (a government appeal). This does not say that on a petition, this Court may review findings which have been set aside.

In cases which have reached the Court pursuant to Article 67(b)(2), we have heretofore taken the position that the case is before us for all purposes. *United States v. Kelly*, 14 M.J. 196, 200 (C.M.A.1982). Thus, we are not limited to consideration of specific issues certified by the Judge Advocate General, but we also may examine other issues of law pertinent to the case.

Conceivably the result we reach in a case reviewed under Article 67(b)(2) may be less favorable to the Government than that which was reached in the Court of Military Review.

Indeed, in some instances, the Judge Advocate General may himself certify an issue which might be resolved in a way that would produce for the Government a result less favorable than that reached in the Court of Military Review. This is in no way anomalous, because the Judge Advocate General is not considered to be an advocate for either the prosecution or the defense. In certifying an issue for consideration by this Court, he may be primarily interested in having the law made more certain as to that issue.

When an accused petitions for review under Article 67(b)(3), this Court also has not considered itself bound by the issues, if any, which the accused has formally assigned through his counsel. Instead, we have been willing to consider issues which the accused wished to raise and which have simply been enumerated by counsel, *see United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982); and, in many instances, this Court has itself specified issues which it considered pertinent to the case. *See* 24 M.J. CXXXI n. 3; 23 M.J. CXXVII n. 3.

However, I am unaware of any case in the Court's long history where—in the absence of issues certified by the Government under Article 67(b)(2)—this Court has taken action upon an accused's petition for review which produced a result less favorable to him than the result reached in the Court of Military Review. We have held that, if specification A was set aside because it was included in or multiplicious with specification B and later specification B was reversed on appeal, specification A could be reinstated. *See, e.g., United States v. Maxwell*, 21 M.J. 229 (C.M.A.1986). However, this outcome is not unfavorable to an accused, because specification A must have been less serious than specification B, or otherwise, there would have been no basis for applying the doctrine of multiplicity.

*See United States v. Zupancic,* 18 M.J. 387, 389–90 (C.M.A.1984).

For this Court to take action adverse to the accused when the Government has not certified the case under Article 67(b)(2) is contrary to the "law of the case" doctrine, which has been repeatedly recognized by this Court. For example, in *United States v. Sales,* 22 M.J. 305, 307 (C.M.A.1986), a decision agreed to by both judges in the majority here, we remarked:

> The Government has not proceeded under Article 67(b)(2), UCMJ, 10 U.S.C. § 867(b)(2), to certify for our review the holding of the Court of Military Review that the findings of guilty were multiplicious; so this ruling constitutes the law of the case and binds the parties. *Cf. United States v. Bell,* 7 U.S.C.M.A. 744, 23 C.M.R. 208 (1957); *United States v. Morris,* 13 M.J. 297, 299 (C.M.A.1982) (Everett, C.J., concurring in the result).

Furthermore, for us to take action adverse to the accused when the Government has not appealed would be contrary to well-established appellate practice. For example, the Supreme Court observed in *United States v. Karo,* 468 U.S. 705, 718–19 n.5, 104 S.Ct. 3296, 3305 n.5, 82 L.Ed.2d 530 (1984): "The United States insists that if beeper monitoring is deemed a search, a showing of reasonable suspicion rather than probable cause should suffice for its execution. That issue, however, is not before us. The initial warrant was not invalidated for want of probable cause, which plainly existed, but for misleading statements in the affidavit. The Government did not appeal the invalidation of the warrant. . . ." *See United States v. ITT Continental Baking Co.,* 420 U.S. 223, 226 n.2, 95 S.Ct. 926, 929 n.2, 43 L.Ed.2d 148 (1975); *United States v. Mississippi Chemical Corp.,* 405 U.S. 298, 307 n.11, 92 S.Ct. 908, 913 n.11, 31 L.Ed.2d 217 (1972).

Finally, to reinstate a disapproved finding in the absence of any government appeal pursuant to Article 67(b)(2) is contrary to legislative intent. As we have often emphasized, *see, e.g., United States v. Grostefon, supra,* Congress has intended that accused servicemembers have ready access to this Court. If, however, an accused is subject to the threat of adverse action by this Court as a result of submitting a petition for review, the effect may be to "chill" his eagerness to seek such review. Certainly, an accused will be reluctant to petition for review—and his lawyer will be reluctant to advise him to submit such a petition—if by doing so he may be penalized.

The underlying policy is analogous to that implicit in Article 63, UCMJ, 10 U.S.C. § 863, which provides that upon a rehearing, an accused may not be tried for any offense of which he was acquitted by the first court-martial or subjected to a more severe sentence.[1] Obviously, Congress feared that an accused would be reluctant to seek review if, by doing so, he subjected himself to conviction of a more serious crime or to harsher punishment.[2] This policy, in turn, is akin to—and even more protective than—that which undergirds the former-jeopardy guarantee of the Fifth Amendment. *Cf. Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969); *Green v. United States,* 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957).

## II

In my view, the words that were disapproved unconditionally by the Court of Military Review cannot now be restored by us in the consolidated specification under Charge VI. Art. 67(d). However, without these words, I do not believe the remaining

---

1. Under Article 63, Uniform Code of Military Justice, 10 USC § 863, an accused may not receive the benefit of a pretrial agreement if, on appeal, the guilty plea is set aside and, at a rehearing, he changes his plea or otherwise does not comply with the agreement.

2. Congress probably also thought that, in light of the automatic review given to court-martial findings and sentence, it would be unfair—or would be perceived as unfair—for a process designed for protecting the accused to yield results less favorable to him than those he had originally received at trial.

language is sufficient to establish Hoff's guilt of misprision.

Misprision of a felony has long been recognized in military law. Thus, paragraph 213*d* (6) of the 1951 Manual states:

> A person who has knowledge of the actual commission of a felony by another and who conceals and does not as soon as possible make known the same to the civil or military authorities is guilty of misprision of the felony.... A mere failure or refusal to disclose the felony without some positive act of concealment does not make one guilty of this offense.

*Accord* para. 213*f* (6), Manual for Courts-Martial, United States, 1969 (Revised edition).

The 1984 Manual for Courts-Martial substitutes "serious offense" for "felony" but otherwise conforms to its 1969 and 1951 predecessors. *See* para. 95(b), Part IV, Manual for Courts-Martial, United States, 1984. Thus, under the 1984 Manual and earlier Manuals, one of the elements of misprision is that "the accused concealed the serious offense *and failed to make it known to civilian or military authorities as soon as possible.*" *See* para. 95, *supra* (emphasis added).

In my view, we are not free to eliminate judicially a long recognized element of the crime of misprision.[3] Accordingly, the specification of Charge VI, as it stands before reinstatement of the words disapproved by the court below, is insufficient as a matter of law to allege misprision of the larceny.

However, I believe these findings are sufficient to establish a different crime—accessory after the fact to the crime of larceny. The elements of this offense are that: "(1) a larceny was committed; (2) appellant knew who the offender was; (3) thereafter he "received, comforted, or assisted the offender"; and (4) he did so "for the purpose of hindering or preventing" the "apprehension, trial, or punishment" of

the offender." Para. 157, 1969 Manual, *supra.*

The first two elements are explicit in the findings. In my view, wrongful concealment of the theft of government property constitutes assisting the offender. Finally, appellant's "suggesting" that, unless certain action was taken, "the Naval Investigative Service would notice the discrepancy" is sufficient here to establish his purpose "of hindering or preventing" the "apprehension" of the persons who had stolen the government property.

According to Note 2 of the Table of Maximum Punishments, 1969 Manual, *supra,* a person convicted "as an accessory after the fact" is "subject to the maximum punishment authorized for the" principal offense, "except that in no case shall the death penalty be imposed nor the confinement exceed more than one-half of the maximum confinement authorized for that offense, nor shall the period of confinement in any case exceed 10 years ..." *Cf.* para. 3, Part IV, 1984 Manual, *supra.* I calculate the maximum punishment for being an accessory after the fact to larceny of government property of a value exceeding $500.00 to be a dishonorable discharge, 30 months' confinement, and total forfeitures—only slightly less than the maximum confinement authorized for misprision of this same larceny (3 years). Obviously, in light of the sentence adjudged, this difference would be inconsequential.

On multiplicity grounds, the Court of Military Review purported to dismiss Charge I, which alleged that Hoff was guilty as an accessory, but it turned right around and consolidated the accessory and the misprision specifications. *See* unpub. op. at 2 (# 2). The consolidation in actuality negates the dismissal of Charge I. *See United States v. Sorrell,* 23 M.J. 122 n.1 (C.M.A.1986). As I interpret the findings under Charge VI (consolidated), they constitute a conviction for being an accessory after the fact.

---

**3.** In view of self-incrimination problems, I also believe there is considerable justification for the position taken by the Court of Military Review that the accused's failure to make the larceny known "as soon as possible" might be excusable.

### III

As the majority opinion points out, the Government conceded in its oral argument that the consolidated specification of the Additional Charge of violating Article 1139 was "multiplicious for findings with the misprision offense." 27 M.J. at 73. Even though, in my view, the affirmed findings under Charge VI should be upheld under Article 78, rather than Article 134, this difference does not seem material for purposes of the concession. Therefore, on the basis of the Government's concession, I would dismiss the consolidated specification of the Additional Charge. Of course, this makes it unnecessary to examine self-incrimination issues, such as those discussed by the Court in *United States v. Reed*, 24 M.J. 80 (C.M.A.1987)—and those I addressed there in a separate opinion.

### IV

I concur in the disposition of the Additional Charge and its consolidated specification, as well as of the sentence. I would affirm the decision below only as to the part of the specification of Charge VI as consolidated which alleges a violation of Article 78 of the Uniform Code. Finally, I dissent from the action setting aside the modification by the court below of the consolidated specification of Charge VI, because Article 67(d) deprives this Court of jurisdiction to take such action.