**Michael N. SHERIDAN, et al.,**

v.

**The UNITED STATES.**

**Civ. S 85–775.**

United States District Court, D. Maryland.

Sept. 12, 1991.

---

Michael J. Kator, Irving Kator, Kator, Scott & Heller, Washington, D.C., for plaintiffs.

Gary P. Jordan, Asst. U.S. Atty., Baltimore, Md., for defendant.

## MEMORANDUM

SMALKIN, District Judge.

On July 24, 1991, this Court sent a letter to counsel, a copy of which is appended hereto, setting forth its tentative views on the pending cross-motions for summary judgment. Counsel were afforded an opportunity to reply to that letter, an opportunity which was taken up by the plaintiffs, but declined by the defendant. Having carefully considered plaintiffs' reply, the Court is of the opinion that the plaintiffs' motion for summary judgment should be denied and the defendant's motion for summary judgment should be granted, for reasons that follow.

First, the Court generally incorporates the reasoning of its July 24 letter in this Memorandum Opinion. In light of plaintiffs' submission, though, the Court abandons any reliance on Carr's intentional violation of Navy Regulation 1136 as falling in any way within the "intentional act" exemption of the Federal Tort Claims Act (FTCA). In all other regards, though, the Court stands by its tentative conclusions of July 24, but as amplified hereinbelow.

The Court notes that when this case was before the Supreme Court, that Court specifically reserved for this Court the question of whether the complaint stated a cause of action under Maryland law. *Sheridan v. United States*, 487 U.S. 392, 401 n. 6, 108 S.Ct. 2449, 2455 n. 6, 101 L.Ed.2d 352 (1988). Now that the matter is before this Court on materially undisputed facts, the inquiry has been transformed into one appropriate in the summary judgment context, *viz.*, whether the defendant is clearly entitled to judgment in its favor as a matter of law under Fed.R.Civ.P. 56(c). In any event, the bottom-line question is the same—Was there, on these facts, a breach of any recognized legal duty owed to the plaintiffs by the defendant? This Court is, then, returned to essentially the same question of legal sufficiency reserved by the Supreme Court in its opinion at fn. 6.

The Court is of the opinion that, as to Navy Regulation 1136 prohibiting the possession of weapons, no duty of ordinary care in enforcement was owed by the defendant to the plaintiffs, who were not Navy personnel, but were merely passersby on a public street near the Bethesda Naval Hospital. There are a number of reasons for this conclusion.

Regulation 1136 is in the nature of a criminal ordinance, enforceable by fine or imprisonment under the Uniform Code of Military Justice. Conceptually, then, the position of the United States under Maryland law should be indistinguishable from that of any municipal corporation having

788

the power to enact and enforce ordinances. Maryland law is clear in holding that a municipal corporation cannot be liable for its agent's negligent failure to enforce a criminal ordinance. There simply is no duty to the general public that gives rise to such liability, *Wynkoop v. Hagerstown,* 159 Md. 194, 150 A. 447 (1930), nor is there any hint of a "special relationship" between the plaintiffs and the United States that would create a duty of due care in the enforcement of a criminal law in this particular case. *See Ashburn v. Anne Arundel County,* 306 Md. 617, 510 A.2d 1078 (1986). *See also Platt v. District of Columbia,* 467 A.2d 149 (D.C.App.1983) (analogous rule in neighboring jurisdiction). (Furthermore, there is authority for the proposition that, unless somehow embodied in a state law duty, a federal agency's failure to enforce one of its own regulations is not actionable under the FTCA. *Tindall by Tindall v. United States,* 901 F.2d 53, 55 n. 8 (5th Cir.1990).)

■ The Court recognizes that there is a certain conundrum evident in this analysis of the case, analogizing the United States to a Maryland municipal corporation, when the fundamental inquiry in FTCA cases is whether the United States would be liable under the laws of the jurisdiction wherein the injury occurred were it "a private individual." 28 U.S.C. § 2674. Private individuals do not enact and enforce criminal laws. It follows, then, that the circle is logically completed by recognition that under Maryland law, no private individual could possibly be liable for non-enforcement of a criminal ordinance. There is no authority known to this Court directly on point, but there is persuasive authority for the general proposition that, in performing (even negligently) a function that a private party could not possibly perform, the United States cannot be liable under the FTCA. *C.P. Chemical Co., Inc. v. United States,* 810 F.2d 34, 37–38 (2d Cir.1987). Here, "because no private analog exists," to the enforcement of criminal ordinances, there can be no FTCA liability. *Id.*

■ The Court has also considered whether, if viewed as if it were simply a private employer, the Government might be liable for its failure to protect the present plaintiffs from harms inflicted upon them by Corpsman Carr, another question not addressed by the Supreme Court. 487 U.S. at 403 n. 8, 108 S.Ct. at 2456 n. 8. The answer to that question must also be *no,* as a matter of law, given the unforeseeability of his aberrant conduct in shooting at passersby, which would be the case under Maryland law *even if* there were a "special relationship" between the plaintiffs and the United States, which there clearly is not here. *See Gay v. United States,* 739 F.Supp. 275, 277 (D.Md.1990) (discussing commentary f to § 314A, Restatement (2d) of Torts (1965)).

■ Finally, focusing on the extent of the Government's duty (not necessarily connected with its employer status, *e.g.,* as owner of premises) to protect third parties from criminal harm at the hands of Carr, the Court notes that there is no longer any contention of Government negligence in not physically restraining Carr. The only contention of fault lies in non-enforcement of the Navy Regulations. Under Maryland's views of duty and proximate cause as applied to conduct resulting in criminal harm to third parties, there would be no liability, even if the Government had been negligent. First, there is simply no protection-from-harm duty running to passersby like plaintiffs, given that there was no foreknowledge of a special threat posed by defendant to the public at large. *See, e.g., Furr v. Spring Grove State Hosp.,* 53 Md. App. 474, 454 A.2d 414 (1983). There being no duty running to plaintiffs as members of the public to protect them from Carr in the first place, the question of negligent enforcement of the weapons regulation is beside the point.

■ Alternatively, there was not, as a matter of law, a sufficiently proximate causal connection between the Government's negligent rule enforcement and the harm suffered by the plaintiffs from Carr's criminal acts to support liability under Maryland law. There is no indication that the Government, at the time it allegedly negligently enforced the weapons regulation,

"realized or should have realized the likelihood ... that a third person [Carr] might avail himself of the opportunity to *commit such a* tort or *crime* [shooting at passersby]." *Scott v. Watson*, 278 Md. 160, 173, 359 A.2d 548, 556 (1976) (quoting Restatement of Torts (2d) § 498 (1965) (emphasis added)). In short, the injuries inflicted by Carr upon plaintiffs were, as a matter of law, insufficiently connected to the Government's alleged negligence to be within Maryland's "acceptable nexus" of proximate cause. *Henley v. Prince George's County*, 305 Md. 320, 334, 503 A.2d 1333, 1340 (1986). *See Peterson v. Underwood*, 258 Md. 9, 16, 264 A.2d 851, 855 (1970) (general discussion of proximate cause in Maryland).

As to Navy Regulation 1139, the Court adheres to the discussion in its tentative findings as to the purpose of that regulation, as well as the absence of proximate cause between its violation and the plaintiffs' injuries. Additionally, the plaintiffs' memorandum in opposition to the Court's tentative conclusions plainly states, at p. 5, that they "never contended that that regulation by itself established a basis for finding negligence." Whether standing alone or in combination with Regulation 1136, Regulation 1139's breach by Johnson's (Carr's roommate) failure to report Carr's weapons possession does not give rise to liability.

Finally, because of the absence of the requisite proximate causal connection and for the other reasons stated hereinabove and in the Court's July 24 letter, any imputed negligence of Carr and Johnson as to the regulations in question does not give rise to Government liability here.

In sum, although this case presents intriguing questions, there is no doubt that defendant is clearly entitled to judgment in its favor as a matter of law. Fed.R.Civ.P. 56(c).

For the reasons stated, an Order will be entered separately, denying the plaintiffs' motion for summary judgment, granting the defendant's motion for summary judgment, and entering judgment in favor of the defendant, with costs.

APPENDIX

UNITED STATES DISTRICT COURT

DISTRICT OF MARYLAND

CHAMBERS OF

FREDERIC N. SMALKIN

UNITED STATES DISTRICT JUDGE

101 W. LOMBARD STREET

BALTIMORE, MARYLAND 21201

(301) 962–3840

FTS 922–3840

July 24, 1991

Michael J. Kator, Esq.

1275 K Street, N.W.

Suite 950

Washington, D.C. 20005–4006

Gary P. Jordan, Esq.

First Assistant U.S. Attorney

101 West Lombard Street

Baltimore, Maryland 21201

Re: *Sheridan v. United States*, Civil No. S–85–775

Dear Counsel:

As you know, Senior Judge Murray has transferred this case to me. Pending before this Court are cross-motions for summary judgment filed by Plaintiffs, Michael N. and Mary A. Sheridan, and Defendant, the United States. I have thoroughly reviewed all of the materials that have been filed—including the parties' motions and responses, Magistrate Judge Klein's Report and Recommendation, dated March 1, 1990, and Senior Judge Murray's Memorandum and Order, dated May 15, 1990. Because there are issues that are not adequately briefed, I am, by this letter, calling for certain additional briefing, as you will see *post*.

Apparently, both parties now agree that the issues in this case are whether Defendant's alleged violation of two Navy regulations constituted negligence, and whether

the Defendant's negligence, if any, resulted in Plaintiffs incurring injuries. My thought is that violation of these regulations does not establish that Defendant was negligent, and even if Defendant was negligent, there was no proximate cause relationship between that negligence and Plaintiffs' injuries. This being the case, I am inclined to grant Defendant's motion for summary judgment and deny Plaintiffs' motion. Because I recognize that my tentative conclusion may not be in complete accord with Senior Judge Murray's Memorandum of May 15, 1990, I will permit each party to submit a brief memorandum for my consideration. In order to aid you in preparing your comments, I have included the following summary of the rationale for my tentative conclusion.

Plaintiffs claim that Defendant was negligent in failing to prevent Navy Corpsman Robert Carr from injuring them. In support of their assertion, Plaintiffs contend that Defendant's violation of Navy Regulation 1136, prohibiting personnel from possessing weapons on Navy property, constituted negligence *per se*. The simple fact is that Regulation 1136 does not provide any basis for establishing Defendant's negligence. Plaintiff has produced no evidence indicating that Defendant or any of its agents, aside from Carr, violated Regulation 1136. Carr's violation of the regulation cannot be a source of Defendant's liability because Carr's possession of firearms was an intentional act and, as such, is barred from consideration under the intentional tort exception to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2680(h). Furthermore, the fact that Carr possessed a weapon does not, without additional evidence, indicate that a violation of Regulation 1136 can be imputed to Defendant and that Defendant was negligent in not discovering Carr's violation.

Plaintiffs also contend that Defendant's violation of Navy Regulation 1139, requiring persons in the Department of the Navy to report offenses committed by other Naval personnel, constituted negligence *per se*. Plaintiffs argue that Carr's roommate, an agent of the Defendant, was aware that Carr possessed weapons in violation of Regulation 1136 and failed to report that offense to the proper authorities. I believe that, under Maryland law, Regulation 1139 does not establish Defendant's negligence.

As a preliminary matter, Regulation 1139 may be inapplicable to this case for the same reason as stated above concerning Regulation 1136—violation of Regulation 1139 requires an intentional act and thus is barred from consideration under the intentional tort exception to the FTCA, 28 U.S.C. § 2680(h). The only case cited by either party that refers to that regulation is a criminal case that analogizes Regulation 1139 to the crime of misprision of a felony. In *United States v. Reed*, 24 M.J. 80 (C.M.A.1987), the United States Court of Military Appeals questioned the validity of the regulation in light of assertions that it violated First Amendment freedom of association guarantees and the Fifth Amendment privilege against self-incrimination and right to due process. The court seemed to imply that for the regulation to be valid, it would have to include the requirement that the accused committed some sort of affirmative act, *i.e.* active concealment. This interpretation would be in accord with the federal interpretation of 18 U.S.C. § 4, Misprision of Felony, which has been construed to require active concealment, and also with Maryland law which abolished the common law crime of misprision of felony. *See Pope v. State*, 284 Md. 309, 396 A.2d 1054 (1979). Thus, the regulation appears to require an affirmative act, not a negligent one, and the FTCA intentional tort exemption is thus applicable. The corollary to this position is that, if Carr's roommate did not commit an affirmative act, then the regulation was not violated and Plaintiffs cannot rely on it to establish negligence.

Furthermore, even if the above analysis does not apply, under Maryland law violation of a regulation may be evidence of negligence but it does not, in and of itself, constitute negligence. In *Pahanish v. Western Trails*, 69 Md.App. 342, 517 A.2d 1122 (1986), the Court of Special Appeals of Maryland delineated three requirements

that must be satisfied in order to find that a violation of a regulation establishes negligence:

First, the plaintiff must be a member of the class of persons the statute was designed to protect. Second, the injuries suffered must be of the type the statute was designed to prevent. Third, the plaintiff must present legally sufficient evidence to demonstrate that the statutory violation was the proximate cause of the injury sustained.

*Id.* at 362, 517 A.2d at 1132. While I understand that Magistrate Judge Klein concluded that the first and second conditions have been met, I must, nevertheless, disagree. It is not clear to this Court that any of these requirements have been satisfied.

First, Plaintiffs cannot show that they are members of a class that the statute was designed to protect. The apparent purpose of Regulation 1139 is to promote good order and discipline within the Navy by requiring Naval personnel to report "offenses ... which come under [their] observation." As the reported cases of the United States Court of Military Appeals indicate, the scope of the "offenses" Naval personnel evidently must report is very broad, to say the least. These "offenses" could conceivably include violations of: federal, state and local laws; Navy regulations; honor codes; and moral obligations. *See e.g. United States v. Reed,* 24 M.J. 80 (C.M.A.1987) (Everett, C.J., concurring). The Court cannot possibly accept the proposition that the Government could be negligent and subject to liability to third persons every time injury results from a sailor's or marine's decision not to report a violation of a law, regulation, or honor code.

In support of their contention that the first requirement is satisfied, Plaintiffs cite to *Pahanish* and *Gardenvillage Realty Corp. v. Russo,* 34 Md.App. 25, 366 A.2d 101 (1976). In those cases the Court of Special Appeals of Maryland found that although the ordinances at issue were silent as to their purposes, or general in nature, the plaintiffs, as members of the general public, were nevertheless members of the protected class. There is, however, a clear distinction between the sweeping language of Regulation 1139 and narrowly-drafted public safety ordinances. Unlike public safety ordinances, the scope of Regulation 1139 is so broad that, if Plaintiffs' position were accepted, it would be difficult to conceive of a situation in which anyone would not be a member of the protected class.

As to the second *Pahanish* requirement, it is difficult to believe that Regulation 1139 was adopted with the purpose of preventing the type of injury suffered by Plaintiffs. This regulation is easily distinguished from those in the Maryland cases cited above. In *Pahanish,* the ordinance in question specified inspection requirements for riding stables. The drafters obviously created the ordinance to ensure that riders (like the plaintiff in that case) would not be injured by unhealthy or unsafe horses. The Court cannot accept Plaintiffs' analogy that the drafters of Regulation 1139 adopted it with the purpose of preventing every conceivable injury that could result from commission of any of the myriad of offenses the regulation requires Navy personnel to report.

Finally, the causal relationship between Regulation 1139 and Plaintiffs' injuries is simply too attenuated to satisfy the third *Pahanish* requirement. Plaintiffs' arguments tend to focus on the "but for" aspect of the causation equation. While it is true that a chain can be linked from Carr's roommate's alleged violation of Regulation 1139 to Plaintiffs' injuries, that chain has a number of kinks and is contorted to such an extent that it cannot fulfill the proximate cause standard. The roommate's failure to report Carr's possession of weapons simply does not *enhance* the likelihood of Carr's criminal actions.

As I indicated above, because my tentative conclusion differs in some possibly determinative aspects from Senior Judge Murray's prior memorandum, each party may submit a brief memorandum on these issues for my consideration. The memo-

randum should be submitted on or before Friday, August 9, 1991 and should not exceed 10 pages in length. There will be no further (*e.g.* opposition or reply) briefs.

Although informal in nature, this letter nonetheless constitutes an order of Court, and it will be docketed and filed as such.

Very truly yours,
(s) Frederic N. Smalkin
Frederic N. Smalkin
United States District Judge

FNS/ttl

cc: Court File—Original