**UNITED STATES**

v.

**Jason J. SANCHEZ, 612 05 4362, Lance Corporal (E–3), U.S. Marine Corps.**

**NMCM 96 01020.**

U.S. Navy–Marine Corps Court of Criminal Appeals.

Sentence Adjudged 19 Jan. 1996.

Decided 16 Jan. 1998.

LT Robert Attanasio, JAGC, USNR, Appellate Defense Counsel.

LT E. Rubiella, JAGC, USNR, Appellate Defense Counsel.

Maj Albert Diaz, USMCR, Appellate Defense Counsel.

LCDR Eric C. Price, JAGC, USN, Appellate Defense Counsel.

LT Russell J.E. Verby, JAGC, USNR, Appellate Government Counsel.

LT Randy S. Kravis, JAGC, USNR, Appellate Government Counsel.

Before LUCAS, Senior Judge, GRANT, and OLIVER, Appellate Military Judges.

**LUCAS, Senior Judge:**

We have examined the record of trial, the three assignments of error[1] and Government's response thereto, and the parties' briefs for two issues specified by the court.[2] We have concluded that the findings and the sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant was committed. *See* Art. 66(c), 59(a), Uniform Code of Military Justice, 10 U.S.C. §§ 866(c), 859(a)(1994) [hereinafter UCMJ].

Consistent with his guilty plea before a general court-martial, military judge alone, the appellant was found guilty of misprision of a serious offense (aggravated assault), a violation of Article 134, UCMJ, 10 U.S.C. § 934. The adjudged sentence consisted of a bad-conduct discharge, total forfeiture of pay and allowances, reduction to the lowest enlisted pay grade, and confinement for 24 months. In accordance with his obligations under a pretrial agreement, the convening authority approved the adjudged sentence but suspended all confinement in excess of 12 months for a period of 12 months from the date of the trial.

### Facts

The appellant and two other Marines were off-base late at night when they encountered a Sailor, who was by himself. All four soon found themselves on a dark and otherwise deserted street. The group separated slightly and the appellant heard a commotion. He turned and saw one of the other Marines

---

1. I. THE MILITARY JUDGE ABUSED HIS DISCRETION IN ADMITTING, OVER DEFENSE OBJECTION, PHOTOGRAPHS OF INJURIES AND ADDITIONAL VICTIM IMPACT EVIDENCE IN AGGRAVATION WHERE APPELLANT WAS CONVICTED OF MISPRISION OF A SERIOUS OFFENSE AND NOT THE UNDERLYING AGGRAVATED ASSAULT.

II. THE MILITARY JUDGE ERRED IN ACCEPTING APPELLANT'S PRETRIAL AGREEMENT WHICH VIOLATED PUBLIC POLICY BECAUSE IT CONTAINED A PROVISION THAT REQUIRED APPELLANT TO "WAIVE ALL WAIVABLE MOTIONS." (Citations omitted.)

III. A SENTENCE INCLUDING AN UNSUSPENDED BAD–CONDUCT DISCHARGE IS INAPPROPRIATELY SEVERE IN LIGHT OF APPELLANT'S PRIOR SERVICE AND MILITARY CHARACTER. (Citations omitted.)

2. I. DO THE APPELLANT'S RESPONSES DURING THE PROVIDENCE INQUIRY ESTABLISH THAT HE WAS CONCEALING FROM AUTHORITIES THE FACT THAT A SERIOUS CRIME HAD BEEN COMMITTED UNDER ARTICLE 134, Uniform Code of Military Justice, 10 U.S.C. § 934 (1994)[hereinafter UCMJ], WHEN THE STIPULATION OF FACT REVEALS THAT THE AUTHORITIES KNEW OF THE CRIME WHEN THE VICTIM IMMEDIATELY SOUGHT AND RECEIVED AID AS A CRIME VICTIM? (Citations omitted.)

II. DO THE APPELLANT'S RESPONSES ESTABLISH THAT HE WAS AN ACCESSORY AFTER THE FACT UNDER ARTICLE 78, UCMJ, 10 U.S.C. § 878 (1994) AND IS THAT MUTUALLY EXCLUSIVE OF THE CRIME OF MISPRISION OF A SERIOUS OFFENSE? (Citation omitted.)

apparently punching the Sailor, who was then on the ground. The appellant rushed to the two struggling figures and saw that his Marine friend was actually stabbing the Sailor repeatedly. The victim received many grievous wounds. These included cuts to his hands and torso, stab wounds to the abdomen and chest, a punctured and collapsed lung, and a lacerated trachea. Among other things, the Marine assailant had pulled the victim's head back and had slit his throat.

The appellant pulled the assailant off the victim and all three Marines fled. Fortunately, the victim was able to immediately stagger to a near-by commercial establishment and report the crime. Military police authorities were promptly notified of the aggravated assault and began a search for the Marines.

For the 45–day period following the brutal attack on the Sailor, the appellant not only failed to disclose the serious crime he witnessed, but he and the other two Marines took several affirmative acts to conceal the fact that they were involved in the assault. Despite those efforts, the appellant was ultimately identified and apprehended for his role in the assault. He was the first of the three Marines to be apprehended.

### Misprision of a Serious Offense

■ Although it is not one we often see, the crime of misprision of a serious offense is well established in military law. *United States v. Hoff*, 27 M.J. 70, 72 (C.M.A.1988); *United States v. Assey*, 9 C.M.R. 732, 1953 WL 2732 (A.F.B.R.1953). This military offense has its roots in 18 U.S.C. § 4 (1994),[3] the civilian Federal crime of misprision of a felony. *See* MANUAL FOR COURTS-MARTIAL, UNITED STATES (1995 ed.), app. 23, at A23–20 [hereinafter MCM]; *Assey*, 9 C.M.R. at 734–35. The civilian Federal crime of misprision of a felony is also well established. *See Branzburg v. Hayes*, 408 U.S. 665, 696, 92 S.Ct. 2646, 2664, 33 L.Ed.2d 626 (1972). The military and Federal crimes are essentially the same. Both require that the Government establish not just that the accused

merely failed to disclose that a serious underlying offense was committed by someone else, but that the accused took some affirmative act to conceal that information. *See Lancey v. United States*, 356 F.2d 407, 408 (9th Cir.), *cert. denied*, 385 U.S. 922, 87 S.Ct. 234, 17 L.Ed.2d 145 (1966); MCM, Part IV, ¶ 95b.

■ In Specified Issue I, we asked whether the appellant could providently plead guilty to misprision of the aggravated assault when the authorities became aware of the crime almost immediately. Although we have not found a reported military case directly addressing Specified Issue I, that issue has been addressed as it applies to 18 U.S.C. § 4.

In *Lancey*, a prosecution under 18 U.S.C. § 4, police authorities became aware of the underlying crime before the misprision offense arose. The *Lancey* court held that whether police authorities did or did not know of the underlying crime or who the perpetrator was is unimportant when the charge is misprision of that underlying crime because those facts are not elements of the offense described by 18 U.S.C. § 4. *Lancey*, 356 F.2d. at 409–10.

■ *Lancey* also resolves a side-issue raised by the appellant. The appellant contends that misprision requires concealment of a crime, and, if he concealed anything, it was only the identity of the perpetrator, not the crime itself. He concludes, therefore, that he cannot be guilty of the crime of misprision.

We disagree with his conclusion. First, under the facts of this case, we conclude that the appellant actively attempted to conceal the circumstances of the serious crime he witnessed. *Lancey* tells us that even if authorities are already aware of the underlying crime, misprision may still lie. Second, we reject the appellant's narrow interpretation of the element "[t]hat, thereafter, the accused concealed the serious offense...." We conclude that that element is satisfied

---

**3.** Whoever, having knowledge of the actual commission of a felony cognizable by a court of the United States, conceals and does not as soon as possible make known the same to some judge or

other person in civil or military authority under the United States, shall be fined under this title or imprisoned not more than three years, or both.

when an individual knows another person has committed a serious offense, then actively conceals information he or she has about that offense, including the identity of the perpetrator.

Because the elements of the military misprision offense are virtually identical to those of the Federal misprision offense and because both share a common legal heritage, we find *Lancey* to be dispositive of Specified Issue I. We conclude that whether authorities were or were not aware of the aggravated assault or the identity of the perpetrator is simply not relevant in determining whether the appellant committed the misprision offense because, as in *Lancey,* those facts are not elements of the appellant's offense.

### Pre-emption Doctrine

■ Under the facts of this case, perhaps the Government could have charged the appellant with being an accessory after the fact and prevailed. *See* Art. 78, UCMJ, 10 U.S.C. § 878; MCM, Part IV, ¶ 2. However, the appellant has provided no authority for the proposition that the Government was therefore required to charge him with an Article 78, UCMJ, 10 U.S.C. § 878, violation instead of the misprision offense, and we find no such authority. We have examined the language of MCM, Part IV, ¶ 95c(1), and conclude that it is intended merely to distinguish the misprision offense from the accessory-after-the-fact offense, and it is not intended to prioritize one offense over the other. The offense of misprision, a general Article violation, is not covered by any other specific enumerated Article of the UCMJ. The traditional theory of pre-emption does not apply. We therefore also find against the appellant with regard to Specified Issue II.

### Evidence in Aggravation

In his first assignment of error, the appellant contends that the military judge erred in admitting certain sentencing evidence over timely defense objections. We disagree.

■ During the sentencing phase of the court-martial, the victim was called as a Government witness and, over a defense objection, testified about the assault, the extent of his injuries, his hospitalization, and the general adverse effects of the assault. The trial defense counsel made timely objections to all this testimony, arguing that it related only to the underlying assault and not the misprision offense, that the appellant had not been convicted of committing the assault, and that the evidence was therefore not admissible.

The military judge also admitted, over a timely defense objection on the same grounds, pictures of the victim's wounds and a record of medical treatment of the victim.

We conclude that the disputed evidence was properly admitted as evidence in aggravation under RULE FOR COURTS-MARTIAL 1001(b)(4), MANUAL FOR COURTS-MARTIAL, UNITED STATES (1995 ed.)[hereinafter R.C.M.], which permits the trial counsel, during sentencing, to present to the court-martial evidence of aggravating circumstances "directly relating to or resulting from the offenses of which the accused has been found guilty."

The disputed evidence does not constitute aggravating circumstances **resulting from** the misprision offense (the second part of the rule). However, it is evidence **directly relating to** that offense (the first part of the rule). In order for a court-martial to determine an appropriate sentence in a misprision case, we think it logical and important for it to know not only what offense was concealed but also the seriousness of that underlying offense. For example, misprision of the offense of marijuana use probably would not be considered as serious as misprision of the crimes of murder or kidnapping. Similarly, the seriousness of the crime of misprision of aggravated assault will depend upon the nature and circumstances of the particular underlying aggravated assault.

The military judge was therefore correct in admitting the disputed Government evidence because it was relevant to establish the nature and circumstances of the underlying aggravated assault, which directly related to the seriousness of the misprision offense.

■ Even assuming that the military judge erred in admitting the disputed evidence during sentencing, the error was harmless. Virtually all of that evidence is also contained in Prosecution Exhibit 1, a

stipulation of fact, which was properly admitted during the plea inquiry. The appellant expressly agreed that the evidence in the stipulation could be used for plea inquiry purposes and also to determine an appropriate sentence. At the time of sentencing, the disputed evidence was therefore properly before the court-martial by the express consent of the appellant. For these two reasons, Assignment of Error I is without merit.

### Pretrial Agreement

■ The appellant's pretrial agreement had a provision in which the appellant agreed to "waive all waivable motions." In Assignment of Error II, the appellant asks us to declare that provision invalid and, as a result, order a new trial. We need not address the issue of the validity of that provision in this case because in response to a direct question from the military judge about the provision, the defense counsel indicated that no motions were waived. There is no issue to resolve. Given the total absence of any possibility of prejudice because no motions were waived, we conclude that relief is unwarranted. *See United States v. Rivera*, 46 M.J. 52, 54 (1997); *United States v. Jennings*, 22 M.J. 837, 839 (N.M.C.M.R.1986). Assignment of Error II is without merit.

### Sentence Appropriateness

We specifically conclude that an unsuspended punitive discharge is not inappropriately severe in this case. Assignment of Error III is without merit.

### Conclusion

Accordingly, we affirm the findings and the sentence, as approved on review below.

Judge GRANT and Judge OLIVER concur.